**EASYRIDERS FREEDOM F.I.G.H.T., an unincorporated association of motorcyclists, et al., Plaintiffs,**

v.

**Maurice HANNIGAN, as Commissioner of the California Highway Patrol, et al., Defendants.**

**No. 93–0807–J (CM).**

United States District Court, S.D. California.

May 25, 1995.

L. Louis Raring, Raring and Lipoff, Costa Mesa, CA, for plaintiffs.

Jill P. Armour, Atty. Gen., Office of the Atty. Gen., State of Cal., San Diego, CA, for state defendants.

C. Ellen Pilsecker, Office of County Counsel, San Diego, CA, for defendants Jim Roache, Brent Wagner aka Brent Walker.

Thomas J. Feeley, City of Huntington Beach and Stone & Feeley, Los Angeles, CA, for defendants Ronald Lowenberg, as Chief of Police of the City of Huntington Beach, Lloyd Edwards, M.P. Kelly, as an officer of the Huntington Beach Police Dept.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON REQUEST FOR PERMANENT INJUNCTION; ISSUING PERMANENT INJUNCTION.

JONES, District Judge.

This case is before the court on a motion for summary judgment on plaintiffs' request that the court issue a permanent injunction against officials of the California Highway Patrol (CHP). Plaintiffs are motorcyclists who have been issued citations under the California Mandatory Motorcycle Helmet Law, California Vehicle Code § 27803, for wearing helmets that were alleged not to comply with federal safety standards. Plaintiffs ask the court to enjoin defendants, specifically officials of the California Highway Patrol,[1] from enforcing the law in an unconstitutional manner.

---

1. The San Diego County Sheriff and officials of the Huntington Beach Police Department are also defendants to this action and have entered into stipulations and settlements agreeing that

## I. *THE HELMET LAW*

The California Mandatory Motorcycle Helmet Law, Vehicle Code § 27803, makes safety helmets mandatory for all drivers and passengers of motorcycles. Further, the law requires that a helmet may not be worn unless it meets certain specifications set out in Vehicle Code § 27802. This section states,

> The department may adopt reasonable regulations ... for safety helmets ... as it determines are necessary for ... safety.... The regulations shall include ... the requirements imposed by Federal Motor Vehicle Safety Standard No. 218 (49 C.F.R. Sec. 571.218).... Each helmet sold ... shall be conspicuously labeled in accordance with the federal standard which shall constitute the manufacturer's certification that the helmet conforms to the applicable federal motor vehicle safety standards.

Pursuant to section 27802, the Department of the California Highway Patrol has adopted Federal Motor Vehicle Safety Standard No. 218 (FMVSS 218) as its sole standard to determine which helmets may legally be worn in California. "Motorcycle and motorized bicycle safety helmets governed by Vehicle Code Section 27802 shall meet Federal Motor Vehicle Safety Standard No. 218." 13 California Code of Regulations § 982.

FMVSS 218 is largely a technical standard which focuses on several characteristics of the helmet, many of which can be determined only through laboratory testing. Under the federal regulations, helmet manufacturers are responsible for undertaking their own testing to determine compliance with FMVSS 218. Helmet manufacturers certify that their helmets are in compliance with FMVSS 218 by placing a sticker on the outside of the helmet with the initials "DOT" for "Department of Transportation". 49 C.F.R. § 571.218. The National Highway Transportation Safety Administration (NHTSA) conducts its own safety testing of selected helmets to determine if they are in fact in compliance with FMVSS 218. If not in compliance, the manufacturers are asked by the United States Department of Transportation to conduct a voluntary recall of the helmet and to stop selling the helmet with the certification affixed. However, the helmet may still legally be sold without certification as a "novelty." If the manufacturer refuses to voluntarily recall the helmet, the government issues a statement of noncompliance.

In the context of the helmet law, a California court has interpreted section 27802 to mean that "it is clear the law requires only that the consumer wear a helmet bearing a certification of compliance." *Buhl v. Hannigan*, 16 Cal.App.4th 1612, 20 Cal.Rptr.2d 740 (1993). A later court has refined this statement to take into account the situation where a rider knows that a manufacturer certified helmet has been subsequently determined not to comply with FMVSS 218, but nevertheless continues to use the helmet. *Bianco v. California Highway Patrol*, 24 Cal. App.4th 1113, 29 Cal.Rptr.2d 711 (1994). *Bianco* held that "the statement in *Buhl* that consumer compliance with the state law only requires the consumer to wear a helmet bearing the DOT self-certification sticker does not apply when a helmet has been shown not to conform with federal standards *and* the consumer has actual knowledge of this fact." *Id.* at 1123, 29 Cal.Rptr.2d 711 (emphasis in original).

Based on the foregoing holdings of *Buhl v. Hannigan*, 16 Cal.App.4th 1612, 20 Cal.Rptr.2d 740 (1993) and *Bianco v. California Highway Patrol*, 24 Cal.App.4th 1113, 29 Cal.Rptr.2d 711 (1994), a motorcyclist will violate the law by wearing a substandard helmet in two situations:

(1) where the helmet did not bear a certification of compliance at the time of sale *or*

(2) where the helmet did bear a certification *but*

  (A) the helmet has been shown not to conform with federal safety standards *and*

---

they will not cite motorcyclists wearing helmets bearing a certification of compliance with federal safety standards during the pendency of this litigation. The above defendants further agreed to be bound by any injunction ordered by the court against the CHP.

(B) the person being cited has *actual knowledge* of a showing of non-conformity with federal standards.

Thus, according to the California courts' interpretation of the helmet law and the regulations promulgated thereunder, law enforcement officials should only issue a citation in two situations: (1) when a helmet does not bear a certification of compliance or (2) when a rider actually knows that a helmet was purchased with a certification of compliance has been shown not to conform to federal standards. In a previous order filed March 15, 1995, this court has held that these guidelines sufficiently narrow law enforcement discretion to overcome any argument that the law is void for vagueness under the Fourteenth Amendment.

## II. *FINDINGS OF FACT*

Plaintiffs ask for an injunction which would prohibit defendants from enforcing the helmet law according to guidelines that do not conform to the law as interpreted by the California courts. According to the court's review of the evidence presented in connection with this motion, the parties do not dispute the fact that defendants cite motorcyclists wearing helmets which bear certifications of compliance, and that the citations are issued without regard to whether the motorcyclist has actual knowledge that a helmet has been shown not to comply with federal standards.

After reviewing the undisputed evidence in this case the court finds that the CHP has a clear official policy of allowing officers to stop motorcyclists and issue citations for substandard helmets based on the officer's subjective opinion of whether the helmet would, if tested, conform to federal safety standards. The CHP has a clear official policy of allowing officers to cite for allegedly substandard helmets regardless of whether the officer has reason to believe that there has been a determination of non-compliance with FMVSS 218 or that the motorcyclist has knowledge that the helmet has been determined not to comply with FMVSS 218.

The court also finds that it is an undisputed fact that plaintiffs have been cited for wearing helmets that CHP officers considered to be in violation of the helmet law, although (1) some of those helmets were in fact never determined to be substandard either through NHTSA testing, independent laboratory testing or a manufacturer recall and (2) of those helmets that had been determined to be in non-compliance, plaintiffs did not have actual knowledge of the determination.

Plaintiffs are unable to conform their conduct to the requirement of the helmet law as enforced by the CHP because they are unable to determine whether a CHP officer will or will not subjectively determine that a certain helmet would not meet FMVSS 218 if tested. Further, because the CHP continues to use its own discretion in determining which helmets are non-conforming and because plaintiffs are frequent motorcyclists wearing a variety of helmets of the type that the CHP has trained its officers likely do not meet federal safety standards, plaintiffs are at real and immediate risk of being cited under the helmet law once again. Based on the foregoing, plaintiffs have standing to bring this action for injunctive relief. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

The court further finds that it is an undisputed fact the CHP has provided training or information to law enforcement agencies throughout California on how to determine whether a helmet likely would not conform to federal safety standards if tested. Plaintiffs have been cited by law enforcement agencies that follow guidelines that were developed in part with information provided by the CHP. Plaintiffs have also had their helmets confiscated by local law enforcement agencies.

## III. *CONCLUSIONS OF LAW*

The Fourth Amendment requires that law enforcement officials must have probable cause before making a warrantless arrest. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Under California Penal Code section 853.5, the issuance of infraction citations such as those issued under the helmet law, constitutes an arrest. Further, the Fourth Amendment also requires that a law enforcement official have reasonable suspicion before making a

traffic stop. *See United States v. Cannon*, 29 F.3d 472 (9th Cir.1994). Thus, a CHP officer acts contrary to the confines of the Fourth Amendment (1) when issuing a citation for a substandard helmet without probable cause to believe that the motorcyclist has violated the helmet law as that law is interpreted by the California courts or (2) when making a traffic stop without reasonable suspicion of the same.

■ Ample authority exists allowing a federal court to issue an injunction under 42 U.S.C. § 1983 prohibiting the current enforcement methods of a state law enforcement agency when those enforcement methods violate the federal constitution.

The standard for the issuance of a permanent injunction is "the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." *LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir.1985) (enjoining INS from Fourth Amendment violations), *amended* 796 F.2d 309 (9th Cir. 1985). Courts have held that the mere fact of a policy violating Fourth Amendment rights establishes that there is irreparable injury, *Community for Creative Non–Violence v. Unknown Agents*, 797 F.Supp. 7, 16 (D.D.C.1992) (enjoining U.S. Marshals Service from Fourth Amendment violations), and that there is an inadequate remedy at law, *Pratt v. Chicago Housing Authority*, 848 F.Supp. 792, 796 (N.D.Ill.1994) (enjoining Housing Authority from Fourth Amendment violations).

■ The court holds that based on the undisputed facts of this case, plaintiffs have established that they will be irreparably injured if an injunction does not issue because they will continue to be subjected to violations of their Fourth Amendment rights. The court further finds that without injunctive relief there is no other adequate means for plaintiffs to remedy the injuries caused by defendants' conduct.

In issuing an injunction against state law enforcement, this court is mindful of principles of federalism and of its obligation to avoid interfering with state law enforcement unless there is a finding that the state agency has a *policy* that violates constitutional rights. However, the Supreme Court in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) and *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) has established that in certain circumstances, such as those present in this case, federal injunctive relief is proper.

In *Allee*, the Court affirmed an injunction against local law enforcement officials which prevented them from interfering with a union's First Amendment rights by harassing and assaulting union members. The injunction affirmed by the Court did "no more than require police to abide by constitutional requirements" by requiring that the police have "adequate cause" to interfere with union organization, such as the violation of a criminal law or obstruction of walkways. 416 U.S. at 813–14, 94 S.Ct. at 2199. The Court explained that the injunction was proper because there was a persistent pattern of police misconduct.

> Isolated incidents of police misconduct under valid statutes would not, of course, be cause for the exercise of a federal court's equitable powers. But we have not hesitated on direct review to strike down applications of constitutional statutes which we have found to be unconstitutionally applied. Where, as here, there is a persistent pattern of police misconduct, injunctive relief is appropriate.

*Id.* at 815, 94 S.Ct. at 2200.

In *Rizzo v. Goode* the Court reversed an injunction against Philadelphia city officials, requiring them to develop a policy for dealing with police misconduct. The Court held that the injunction was improper because there was not a finding by the district court that the defendants had a policy which violated constitutional rights—there were only incidents of misconduct by individual officers. 423 U.S. at 373–77, 96 S.Ct. at 605–07 (1975) However, as in *Allee*, the Court recognized that 42 U.S.C. § 1983 does authorize injunctive relief for constitutional violations and that such an injunction would be proper against state law enforcement when there is an intentional pattern of misconduct.

The Ninth Circuit has recently applied *Rizzo* and *Allee* in a case involving an injunction against the Los Angeles County Sheriffs

Department's treatment of residents of a Los Angeles neighborhood. *Thomas v. County of Los Angeles,* 978 F.2d 504 (9th Cir.1992). Though the Ninth Circuit reversed the injunction on the grounds that there was not sufficient support in the record supporting the district court's findings of an official policy and the linking of the mistreatment with the official policy, the court did affirm the concept that "a state law enforcement agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct." *Id.* at 508.

Other Ninth Circuit cases have approved injunctions against law enforcement under the Fourth Amendment. *Conner v. City of Santa Ana,* 897 F.2d 1487, 1493–94 (9th Cir. 1990) affirmed an injunction against a city's warrantless entry onto property to confiscate nuisance automobiles. The court rejected the city's argument that the injunction "impermissibly encroaches upon their police power to make warrantless searches." *Id.* at 1494. In *LaDuke v. Nelson,* 762 F.2d 1318, 1330 (9th Cir.1985), the Ninth Circuit affirmed an injunction against the INS based on the Fourth Amendment, enjoining it from conducting searches of migrant housing without probable cause. The court stated, "The Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a 'pattern' of illicit law enforcement behavior." *Id.* at 1324.

The court holds that an injunction is proper under the law as set out by the above cases because there is no dispute that the CHP has a *policy* which allows them to cite motorcyclists without probable cause to believe that the helmet law, as interpreted by the California courts, is being violated. The CHP has a policy of enforcing the helmet law which violates the Fourth Amendment and which this court will enjoin.

Plaintiffs, as prevailing parties, have moved for attorneys fees pursuant to 42 U.S.C. § 1988. The court will consider the request for attorneys fees upon the filing of a properly noticed and supported motion.

## IV. TERMS OF THE INJUNCTION

The terms of the injunction are as follows: Maurice Hannigan, as Commissioner of the California Highway Patrol, Dwight Helmick, as Deputy Commissioner of the California Highway Patrol, and their officers, agents, servants, employees, attorneys, or any of them, and all persons acting in concert with any of the foregoing, are hereby permanently enjoined:

(1) From stopping any motorcyclists for suspected violation of Vehicle Code § 27803 unless there is reasonable suspicion to believe that

   (A) the helmet worn by the driver or passenger was not certified by the manufacturer at the time of sale, *or*

   (B) the helmet was certified by the manufacturer at the time of sale *and*

   (i) the person being stopped has *actual knowledge* of a showing of a determination of non-conformity with federal standards.

(2) From citing any motorcyclist for suspected violation of Vehicle Code § 27803 unless there is probable cause to believe that

   (A) the helmet worn by the driver or passenger was not certified by the manufacturer at the time of sale, *or*

   (B) the helmet was certified by the manufacturer at the time of sale *and*

   (i) the person being cited has *actual knowledge* of a showing of a determination of non-conformity with federal standards.

For the purposes of this injunction, a determination of non-conformity with federal standards is defined as one or more of the following: (1) a determination of non-compliance issued by the National Highway Transportation Safety Administration or (2) a manufacturer recall of a helmet because of non-compliance with FMVSS 218 or (3) other competent objective evidence from independent laboratory testing that the helmet does not meet FMVSS 218.

Maurice Hannigan, as Commissioner of the California Highway Patrol and Dwight Helmick, as Deputy Commissioner of the California Highway Patrol, are further directed

to file with the Court and serve on plaintiffs, within fifteen (15) days after the date of entry of this Permanent Injunction, a report in writing and under oath with the full name and address of each enforcement agency that has been previously instructed or informed on the CHP enforcement methods to enable plaintiffs to serve such agencies with copies of this injunction.

This injunction shall remain permanently in force until such time as Vehicle Code sections 27802 or 27803 or the regulations promulgated thereunder are amended or modified to include additional or revised provisions related to helmet compliance or enforcement standards, or until such time as a decision of the California appellate courts establishes additional or revised standards related to helmet compliance or enforcement standards.

**IT IS SO ORDERED.**