92 F.3d 1486
 96 Cal. Daily Op. Serv. 6111, 96 Daily Journal
D.A.R. 10,011
EASYRIDERS FREEDOM F.I.G.H.T., an unincorporated association
of motorcyclists, et al., Plaintiffs-Appellees,
v.
Maurice HANNIGAN, as Commissioner of the California Highway
Patrol, et al., Defendants-Appellants.
EASYRIDERS FREEDOM F.I.G.H.T., an unincorporated association
of motorcyclists, et al., Plaintiffs-Appellants,
v.
Maurice HANNIGAN, as Commissioner of the California Highway
Patrol, et al., Defendants-Appellees.
 Nos. 95-55946, 95-55947.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided Aug. 16, 1996.
 
 Jill P. Armour, Deputy Attorney General, San Diego, California, for defendants-appellants-cross-appellees.
 L. Louis Raring, Raring & Lipoff, Costa Mesa, California, for plaintiffs-appellees-cross-appellants.
 Appeals from the United States District Court for the Southern District of California, Napoleon A. Jones, District Judge, Presiding. D.C. Nos. CV-93-00807-NAJ, CV-93-00807-NAJ.
 Before: WIGGINS, THOMPSON and TROTT, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Easyriders Freedom F.I.G.H.T. ("Easyriders"), an unincorporated association of motorcycle enthusiasts, and fourteen individual California motorcycle riders brought suit against, inter alia, Maurice Hannigan, Commissioner of the California Highway Patrol ("CHP"), to enjoin the enforcement of the California motorcycle helmet law, Cal. Veh.Code §§ 27802-03, which requires motorcycle drivers and passengers to wear helmets that comply with federal safety standards. Hannigan appeals the district court's summary judgment grant of a permanent injunction, enjoining CHP from stopping any motorcyclists without reasonable suspicion that they are violating the helmet law, and from citing any motorcyclists without probable cause to believe that they have violated the helmet law. Easyriders cross-appeals the district court's ruling on Hannigan's motion for summary judgment that § 27803 is not unconstitutionally vague. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and reverse in part.
 
 THE HELMET LAW
 
 2
 California Vehicle Code § 27803(b), which became effective in 1992, reads in relevant part:
 
 
 3
 (a) A driver and any passenger shall wear a safety helmet meeting requirements established pursuant to Section 27802 when riding on a motorcycle, motor-driven cycle, or motorized bicycle.
 
 
 4
 (b) It is unlawful to operate a motorcycle, motor-driven cycle, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).
 
 
 5
 (c) It is unlawful to ride as a passenger on a motorcycle, motor-driven cycles, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a).
 
 
 6
 Cal. Veh.Code. § 27803 (West Supp.1995). California Vehicle Code § 27802 provides that the California Department of Transportation
 
 
 7
 may adopt reasonable regulations establishing specifications and standards for safety helmets offered for sale, or sold, for use by drivers and passengers of motorcycles and motorized bicycles as it determines are necessary for the safety of those drivers and passengers. The regulations shall include, but are not limited to, the requirements imposed by Federal Motor Vehicle Safety Standard No. 218 (49 C.F.R. Sec. 571.218) and may include compliance with that federal standard by incorporation of its requirements by reference. Each helmet sold or offered for sale for use by drivers and passengers of motorcycles and motorized bicycles shall be conspicuously labeled in accordance with the federal standard which shall constitute the manufacturer's certification that the helmet conforms to the applicable federal motor vehicle safety standards.
 
 
 8
 Cal. Veh.Code § 27802 (West Supp.1995).
 
 
 9
 Federal Motor Vehicle Safety Standard No. 218 (hereinafter "Standard 218"), referenced by the California helmet law and the only provision currently articulating the requirements for helmets to comply with the California helmet law, is a largely technical regulation that establishes numerous standards for motorcycle safety helmets. See generally, 49 C.F.R. § 571.218 (1995). Assuring a helmet's compliance with the standard requires several impact and penetration tests in a laboratory setting. Helmet manufacturers are responsible for performing their own tests on helmets to determine compliance with federal regulations before the helmets are sold to the public. Compliance is certified by the manufacturers' placement of a sticker on the outside of the helmet with the initials "DOT" for "Department of Transportation." The National Highway Transportation Safety Administration ("NHTSA") will occasionally contract with private testing laboratories to test selected helmets to determine their compliance with federal regulations. If the helmets are found not to be in compliance, the manufacturers are required to notify owners of the helmets of the defect in the helmet and to stop selling non-complying helmets with the DOT certification. See 49 U.S.C. §§ 30112, 30115, 30116, 30118 (1994). Manufacturers that do not recall non-complying helmets are subject to substantial fines. 49 U.S.C. § 30165 (1994). The NHTSA often releases information regarding non-complying helmets to law enforcement agencies and through consumer advisories, and consumers can contact the NHTSA to determine whether a particular helmet has been recalled. Federal law also calls for decisions regarding recalls to be published in the Federal Register. See 49 U.S.C. § 30118(a) (1994). Manufacturers of helmets that do not comply with Standard 218 may continue to sell them without the DOT sticker as "novelty" helmets.
 
 
 10
 Two California Court of Appeals cases have clarified the responsibility that motorcyclists bear in complying with the California helmet law. In Buhl v. Hannigan, 16 Cal.App.4th 1612, 20 Cal.Rptr.2d 740 (1993), several motorcyclists challenged the helmet law on vagueness grounds, arguing, inter alia, that Standard 218 is so technical that a motorcyclist would need to be a scientist with access to a testing laboratory to determine whether a particular helmet complies with the standard. The court, however, concluded that the helmet law does not require either the motorcyclist or an enforcing officer to determine the compliance of a particular helmet, but rather that the law requires "only that the consumer wear a helmet bearing a certification of compliance." Id. at 622, 20 Cal.Rptr.2d at 745 (emphasis in original). In a subsequent case, Bianco v. California Highway Patrol, 24 Cal.App.4th 1113, 29 Cal.Rptr.2d 711 (1994), a motorcyclist challenged a CHP bulletin that had declared that a helmet manufactured by E & R Fiberglass did not comply with Standard 218, causing Bianco to be cited for violating the helmet law while wearing the E & R helmet. Bianco attempted to rely on Buhl in arguing that he could not be cited for wearing the E & R helmet because it bore the DOT self-certification sticker at the time of his purchase. The Bianco court, however, concluded that "the statement in Buhl that consumer compliance with the state law only requires the consumer to wear a helmet bearing the DOT self-certification sticker does not apply when a helmet has been shown not to conform with federal standards and the consumer has actual knowledge of this fact." Id. at 1123, 29 Cal.Rptr.2d at 717 (emphasis in original).
 
 PROCEDURAL HISTORY
 
 11
 On May 25, 1993, Easyriders and fourteen individual motorcyclists who had been cited for violating California's helmet law for allegedly wearing helmets that did not meet federal standards, filed suit against several officers and police officials of the CHP, the San Diego Sheriff's Department ("SDSD"), and the Huntington Beach Police Department ("HBPD"), in the United States District Court for the Southern District of California. The complaint sought to enjoin enforcement of the helmet law on the ground that it was unconstitutionally vague, and to enjoin the law enforcement agencies from enforcing the helmet law in a manner inconsistent with the Fourth and Fourteenth Amendments of the United States Constitution. The individual motorcyclists claimed that they have been cited for wearing helmets that they believed complied with federal regulations and had the required DOT sticker attached. They claimed that they were unable to identify which helmets comply with federal regulations and California law, and that law enforcement officials have continually and will continually cite them for helmet law violations based on officers' subjective determinations of which helmets comply with the regulations. All of the individual motorcyclists had been stopped by the CHP, SDSD, or HBPD while wearing helmets that covered only the top of the head above the ears and were secured around the motorcyclists' chins by nylon straps thread through two D-rings.[1]
 
 
 12
 In late 1994 and early 1995, Easyriders settled the case with the SDSD and HBPD defendants,[2] leaving the CHP officials as the only defendants in this matter. On March 15, 1995, the district court granted the CHP's summary judgment motion, holding that the helmet law as interpreted by the California courts is not void for vagueness. The district court also found, however, that CHP was issuing citations to motorcyclists wearing helmets with DOT stickers without regard to whether the motorcyclists had knowledge that the helmet had been shown not to comply with federal standards. The court requested further briefing from the parties on whether an injunction should be issued.
 
 
 13
 On May 25, 1995, the district court issued its decision on Easyriders' request for a permanent injunction. Easyriders Freedom F.I.G.H.T. v. Hannigan, 887 F.Supp. 240 (S.D.Cal.1995). The district court found that under the California helmet law as interpreted by Buhl and Bianco, a motorcyclist wearing a helmet that does not comply with Standard 218 violates the helmet law in two situations:
 
 
 14
 (1) where the helmet did not bear a certification of compliance at the time of sale or
 
 
 15
 (2) where the helmet did bear a certification but
 
 
 16
 (A) the helmet has been shown not to conform with federal safety standards and
 
 
 17
 (B) the person being cited has actual knowledge of a showing of non-conformity with federal standards.
 
 
 18
 Id. at 242-43 (emphasis in original). Having reviewed the record, the district court concluded that "the CHP has a clear official policy of allowing officers to stop motorcyclists and issue citations for substandard helmets based on the officer's subjective opinion of whether the helmet would, if tested, conform to federal safety standards." Id. at 243. In addition the district court found that "[t]he CHP has a clear official policy of allowing officers to cite for allegedly substandard helmets regardless of whether the officer has reason to believe that there has been a determination of non-compliance with [Standard 218] or that the motorcyclist has knowledge that the helmet has been determined not to comply with [Standard 218]." Id. Finally, the district court found that the individual motorcyclists had been cited by CHP despite the fact that some of their helmets had not been determined through testing or recall to be in non-compliance, and despite the fact that the plaintiffs who were cited while wearing helmets that were shown to be in non-compliance did not have actual knowledge of such non-compliance. Id. The district court concluded that the CHP violates the Fourth Amendment by "issuing a citation for a substandard helmet without probable cause" and "making a traffic stop without reasonable suspicion" that a motorcyclist has violated the helmet law. Id. at 244. In light of CHP's clear policy of stopping and citing motorcyclists in violation of the Fourth Amendment, the district court enjoined the CHP:
 
 
 19
 (1) From stopping any motorcyclists for suspected violation of Vehicle Code § 27803 unless there is reasonable suspicion to believe that
 
 
 20
 (A) the helmet worn by the driver or passenger was not certified by the manufacturer at the time of sale, or
 
 
 21
 (B) the helmet was certified by the manufacturer at the time of sale and
 
 
 22
 (i) the person being stopped has actual knowledge of a showing of a determination of non-conformity with federal standards.
 
 
 23
 (2) From citing any motorcyclist for suspected violation of Vehicle Code § 27803 unless there is probable cause to believe that
 
 
 24
 (A) the helmet worn by the driver or passenger was not certified by the manufacturer at the time of sale, or(B) the helmet was certified by the manufacturer at the time of sale and
 
 
 25
 (i) the person being cited has actual knowledge of a showing of a determination of non-conformity with federal standards.
 
 
 26
 Id. at 245 (emphasis in original). The district court defined a determination of non-conformity with federal standards as: "(1) a determination of non-compliance issued by the [NHTSA] or (2) manufacturer recall of a helmet because of non-compliance with [Standard 218] or (3) other competent objective evidence from independent laboratory testing that the helmet does not meet [Standard 218]." Id. The district court declared that the injunction was to remain in effect until an amendment of the helmet law or the regulations thereunder, or a subsequent decision of the California courts established "additional or revised provisions related to helmet compliance or enforcement standards." Id. at 246. The district court also required the CHP to provide notice of the injunction to the law enforcement agencies throughout California that rely on the CHP standards for helmet law enforcement. Id.
 
 DISCUSSION
 
 27
 On appeal, Hannigan argues that Easyriders has not satisfied the legal requirements to support the district court's issuing of an injunction, and that the injunction incorrectly requires an officer making a traffic stop or issuing a citation to know before citing or stopping a motorcyclist with a non-complying helmet that the motorcyclist has actual knowledge of the helmet's non-compliance. On cross-appeal, Easyriders seeks to enjoin the enforcement of the helmet law on the ground that it is unconstitutionally vague, even as interpreted by the California courts, because motorcyclists are unable to conclude when there has been a determination of a particular helmet's non-compliance with Standard 218.
 
 I. STANDARD OF REVIEW
 
 28
 We review a district court's grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). "We must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Id. The district court's grant of a permanent injunction is reviewed for an abuse of discretion or an erroneous application of legal principles. American-Arab Anti-Discrimination Comm. v. Reno, 70 F.3d 1045, 1066 (9th Cir.1995).
 
 II. VAGUENESS OF THE HELMET LAW
 
 29
 Easyriders argues that despite the limiting instruction given to the helmet law by the California Courts, under which motorcyclists wearing helmets bearing a certification sticker at the time of purchase must have actual knowledge of their helmet's non-compliance with Standard 218 to violate the helmet law, the helmet law remains unconstitutionally vague because motorcyclists "do not know what they are required to have actual knowledge of." We conclude that Easyriders and the individual plaintiffs do not have standing to challenge the vagueness of the helmet law because they seek only an injunction against future enforcement of the law.
 
 
 30
 To prove that the helmet law is unconstitutionally vague, Easyriders must demonstrate that the law "(1) does not define the conduct it prohibits with sufficient definitiveness and (2) does not establish minimal guidelines to govern law enforcement." United States v. Davis, 36 F.3d 1424, 1434 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). "A criminal statute is not vague if it provides adequate notice in terms that a reasonable person of ordinary intelligence would understand that her conduct is prohibited." United States v. Martinez, 49 F.3d 1398, 1403 (9th Cir.1995), cert. denied --- U.S. ----, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996).
 
 
 31
 Easyriders may not assert a facial challenge to the helmet law. Where a law at issue "does not implicate First Amendment rights, it may be challenged for vagueness only as applied," id., unless the enactment is "impermissibly vague in all of its applications." Schwartzmiller v. Gardner, 752 F.2d 1341, 1348 (9th Cir.1984) (quoting Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)); see also United States v. Doremus, 888 F.2d 630, 634 (9th Cir.1989) (statute facially vague if it specifies "no standard of conduct at all"), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). While the statute may have some ambiguity on its face regarding the exact specifications for a helmet that complies with the helmet law, the statute does define generally what conduct is prohibited, and does establish guidelines, though concededly ones that have been difficult to follow, for law enforcement officials. Indeed, the record reveals that the vast majority of motorcyclists have successfully complied with the helmet law with little difficulty.[3]
 
 
 32
 Accordingly, the helmet law can only be challenged as applied to a specific motorcyclist. "In scrutinizing a statute for intolerable vagueness as applied to specific conduct, courts must take the statute as though it read precisely as the highest court of the State has interpreted it." Schwartzmiller, 752 F.2d at 1348 (citations omitted); see also Kolender v. Lawson, 461 U.S. 352, 355-56 n. 4, 103 S.Ct. 1855, 1857 n. 4, 75 L.Ed.2d 903 (1983).[4] The district court correctly articulated the helmet law as it has been interpreted by the California courts. The California court of appeals in Bianco concluded that consumers comply with the helmet law as long as they are wearing a helmet that bore the DOT self-certification sticker at the time of purchase unless the "helmet has been shown not to conform with federal standards and the consumer has actual knowledge of this fact." 24 Cal.App.4th at 1123, 29 Cal.Rptr.2d at 717 (emphasis in original). As examples of information that could provide such knowledge, the Bianco court referred to a determination of non-compliance by NHTSA, a recall by the manufacturer due to non-compliance, or independent laboratory test results. Id. at 1124-25, 29 Cal.Rptr.2d at 717-18. A scienter requirement, like the requirement that a motorcyclist have actual knowledge of their helmet's non-compliance, can mitigate any vagueness in a statute. Hanlester Network v. Shalala, 51 F.3d 1390, 1398 (9th Cir.1995).
 
 
 33
 In light of the interpretation given to the helmet law by the California courts and Easyriders inability to bring a facial challenge to the helmet law, we conclude that the motorcyclists do not have standing to challenge the vagueness of the helmet law in this action because the plaintiffs only seek an injunction against future enforcement of the law. The standing requirements of Article III of the Constitution require us to review only "cases and controversies," which requires a plaintiff seeking to invoke a federal court's authority to show "(1) actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision." Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1353 (9th Cir.1994). Where a plaintiff cannot satisfy these requirements, we lack jurisdiction.
 
 
 34
 Most of the plaintiffs in this case have alleged that they were improperly stopped or cited for violating the helmet law on dates occurring prior to the Buhl and Bianco decisions. Thus, any injury that they suffered is not fairly traceable to Bianco 's alleged offending vague interpretation of the helmet law. A few of the plaintiffs allege that they were cited and convicted for violating the helmet law after the Bianco decision, even though they lacked actual knowledge of their helmet's non-compliance with Standard 218. Even were we to declare that the helmet law was unconstitutionally vague as applied to those plaintiffs, however, such a favorable decision would not redress the injury allegedly suffered by the plaintiffs because the complaint seeks only an injunction against future enforcement of the helmet law. Any past injury suffered by the plaintiffs does not give them standing to enjoin future enforcement of the helmet law.
 
 
 35
 Insofar as the complaint seeks an injunction against future enforcement of the helmet law based on the possible vague application of the law to the individual plaintiffs, such a claim is not ripe for review. Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication. See Freedom to Travel Campaign v. Newcomb, 82 F.3d 1431, 1441 (9th Cir.1996) (concluding that vagueness of one provision of a regulation was not ripe for review due to insufficient facts); Mack v. United States, 66 F.3d 1025, 1033 (9th Cir.1995) (holding that the vagueness of Brady Handgun Act not ripe for adjudication in suit for injunction, but could be raised as a defense in the case of an unlikely criminal prosecution of law enforcement agents), cert. granted, --- U.S. ----, 116 S.Ct. 2521, 135 L.Ed.2d 1046 (1996). The plaintiffs have not pointed to any cases in which a motorcyclist's guilt or innocence turned on whether the motorcyclist's receipt of ambiguous information regarding a helmet's compliance with Standard 218 was sufficient to satisfy the helmet law's "actual knowledge" requirement. Examining the vagueness of the helmet law as applied to plaintiffs would require us to speculate whether a finding of "actual knowledge" of a helmet's non-conformity based on such ambiguous information would make the helmet law unconstitutionally vague as applied to a motorcyclist. The standing requirements of Article III do not allow for such speculation. In the context of Easyriders' request for an injunction, Easyriders' vagueness challenge to the helmet law does not satisfy the Article III case or controversy requirements. Easyriders' vagueness claim is dismissed.
 
 III. CHP ENFORCEMENT OF THE HELMET LAW
 
 36
 Hannigan argues that the CHP's procedures for enforcing the helmet law do not violate the Fourth Amendment, or alternatively, that Easyriders did not make the showing necessary to justify the district court's issuing an injunction against the CHP. Easyriders argues that the CHP violated the Fourth Amendment by stopping and citing motorcyclists without regard to whether they had actual knowledge of the helmet's non-compliance with Standard 218, and that motorcyclists stand to suffer irreparable harm if the CHP's method of enforcing the helmet law is not enjoined.
 
 
 37
 "The requirements for the issuance of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.' " American-Arab Anti-Discrimination Comm., 70 F.3d at 1066-67 (quoting LaDuke v. Nelson, 762 F.2d 1318, 1322 (9th Cir.1985), modified, 796 F.2d 309 (9th Cir.1986)).[5] Easyriders alleges that its members and the individual plaintiffs stand to suffer irreparable harm due to CHP's policy of stopping and citing motorcyclists without regard to whether the motorcyclists have actual knowledge of their helmet's non-compliance with Standard 218.
 
 
 38
 We are mindful that the injunction at issue here enjoins the law enforcement activities of a state law enforcement agency. "[I]n reviewing a district court's injunction against an agency of state government, we scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' federal constitutional and statutory rights but does not require more of state officials than is necessary to assure their compliance with federal law." Clark v. Coye, 60 F.3d 600, 604 (9th Cir.1995). This requires both that there be a determination that the conduct of the CHP violates federal constitutional law, id. at 603-04, and that the scope of the injunction is no broader than necessary to provide complete relief to the named plaintiffs and the members of Easyriders. Meinhold v. United States Dep't of Defense, 34 F.3d 1469, 1480 (9th Cir.1994) (reversing nationwide injunction against Navy from discharging any homosexual servicemen where class had not been certified despite upholding relief in favor of named plaintiff).
 
 
 39
 A. CHP's Stopping of Motorcyclists With Suspicious Helmets
 
 
 40
 The CHP must comply with the Fourth Amendment, as applied to the states through the Fourteenth Amendment, when stopping motorcyclists that it suspects are violating the helmet law. Because the Fourth Amendment prohibits only "unreasonable" searches and seizures, the ultimate test of a seizure's reasonableness entails a balancing of the governmental interest which justifies the intrusion and the level of intrusion into the privacy of the individual. Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 448-49, 110 S.Ct. 2481, 2484, 110 L.Ed.2d 412 (1990). In Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1967), the Supreme Court articulated the level of suspicion required for a police officer to briefly stop and question an individual for investigatory purposes. This court has further elaborated on the level of suspicion required for so-called "Terry stops" of automobiles.
 
 
 41
 The Fourth Amendment's prohibition of unreasonable searches and seizures extends to the brief investigatory stop of a vehicle. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578-79, 45 L.Ed.2d 607 (1975). An officer may not detain a motorist without a showing of "reasonable suspicion." [United States v. Rodriguez, 976 F.2d 592, 594 (9th Cir.1992), amended 997 F.2d 1306 (9th Cir.1993).] This "objective basis, or 'reasonable suspicion,' must consist of 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.' " Id. (citations omitted). A "gloss on this rule prohibits reasonable suspicion from being based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir.1994).
 
 
 42
 United States v. Garcia-Camacho, 53 F.3d 244, 245-46 (9th Cir.1995). See also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (holding that the "Fourth Amendment requires 'some minimal level of objective justification' for making" a Terry stop, which is "considerably less than proof of wrongdoing by a preponderance of the evidence") (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).
 
 
 43
 A determination of whether an officer had "reasonable suspicion" of wrongdoing "is not readily reduced to 'a neat set of legal rules.' " United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). Rather, the court must consider "the totality of the circumstances surrounding the stop." United States v. Hall, 974 F.2d 1201, 1204 (9th Cir.1992); see also United States v. Franco-Munoz, 952 F.2d 1055, 1057 n. 3 (9th Cir.1991), cert. denied, 509 U.S. 911, 113 S.Ct. 3015, 125 L.Ed.2d 705 (1993); Hernandez-Alvarado, 891 F.2d at 1416. "This includes the 'collective knowledge of the officers involved, and the inferences reached by experienced, trained officers.' " Hall, 974 F.2d at 1204 (quoting United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)); see also Hernandez-Alvarado, 891 F.2d at 1416 (noting that this experience may not be used to give the officers unbridled discretion in making a stop).
 
 
 44
 Nothing in the record indicates that there is a CHP pattern or policy of stopping motorcyclists without reasonable suspicion that the motorcyclists are violating the helmet law. It is indicated by photographs and actual helmets in the record that the helmets of the named plaintiffs all have fiberglass shells and cover only the top of the head above the ears. The liner of the helmets is one half inch thick or less, and the helmets are secured around the motorcyclist's chin by nylon straps which thread through two D-rings. Because a Terry stop requires "considerably less than proof of wrongdoing by a preponderance of the evidence," Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585, an officer need not have a particularized suspicion that a motorcyclist has actual knowledge that his helmet does not comply with Standard 218 if other objective evidence, such as the appearance of the helmet, sufficiently supports an investigatory stop. It is possible that the appearance of a helmet alone would be insufficient to support reasonable suspicion that the helmet law was being violated if the helmet law had been very-recently enacted or there had been no publicity regarding certain small helmets' non-compliance with Standard 218. In such a case, it might be unreasonable to draw the inference, based only on the helmet's appearance, that a motorcyclist knows of his helmet's non-compliance. However, given the large amount of publicity about novelty helmets and otherwise non-complying helmets, as indicated by the numerous press releases and motorcycle magazine articles in the record regarding non-conforming helmets, an officer would usually have at least "reasonable suspicion," based on reasonable inferences drawn from the helmet's appearance and publicity regarding non-complying helmets, that the motorcyclist was violating the helmet law.[6]
 
 
 45
 While there are some helmets that are DOT approved that are similar in appearance to non-complying helmets, as demonstrated by the helmets submitted to the court and a CHP brochure designed to help consumers distinguish legal and "novelty" helmets, " 'the facts used to establish "reasonable suspicion" need not be inconsistent with innocence.' " Rodriguez, 976 F.2d at 594 (quoting Franco-Munoz, 952 F.2d at 1057). Thus, an officer may stop a motorcyclist for investigatory purposes based on the appearance of the helmet, even if in many cases the motorcyclist will not have the requisite knowledge of non-compliance and thus will be innocent of wrongdoing. There are no allegations in this case that the CHP has repeatedly stopped motorcyclists wearing helmets that actually comply with Standard 218 or that did not have a physical appearance that merited further investigation.
 
 
 46
 Investigatory stops of motorcyclists with apparently non-complying helmets serve the dual purpose of identifying individuals who are intentionally violating the law, and informing riders who are unknowingly wearing non-complying helmets that their helmets do not comply and possibly will not protect them sufficiently in the case of an accident. Any minimal intrusion imposed upon individuals whose helmets do comply with helmet laws is justified by the furtherance of these important government goals, and the underlying California policy goal of providing "an additional safety benefit" to its motorcyclist citizens. See Cal. Veh.Code § 27803(f) (West Supp.1995). There is no showing in the record that the initial stopping of the motorcyclists violated the Fourth Amendment.
 
 
 47
 Of course, investigatory stops that initially comply with the Fourth Amendment because they are supported by reasonable suspicion may violate the Fourth Amendment if they continue for a period of time beyond that which is necessary for brief investigation. Terry stops are "constitutionally permissible only where the means utilized are the least intrusive reasonably available. '[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " Kraus v. County of Pierce, 793 F.2d 1105, 1108 (9th Cir.1986) (quoting Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)), cert. denied, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). If the investigatory stops of motorcyclists continued for an extended period of time, probable cause that the motorcyclists knew about the helmet's non-compliance could be required. "Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But [Supreme Court] cases impose no rigid time limitation on Terry stops." Sharpe, 470 U.S. at 685, 105 S.Ct. at 1575. See also Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir.1995) (holding that an initially lawful Terry stop can be converted into a full-fledged arrest for which probable cause is required, but noting that there is "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest") (citation omitted). However, the possibility that police officers will exceed the permissible period of detention for Terry stops without probable cause cannot salvage the first half of the injunction, which imposes a more substantial burden on the CHP than is required to protect motorcyclists' constitutional rights.
 
 B. CHP's Citing of Motorcyclists
 
 48
 The CHP must also comply with the Fourth Amendment when citing motorcyclists for violating the helmet law. Under California law, a traffic citation is considered an "arrest," see Cal. Pen.Code § 853.5 (West Supp.1996), for which an officer must have probable cause. See, e.g., People v. Parnell, 16 Cal.App.4th 862, 875, 20 Cal.Rptr.2d 302, 309 (1993). While Hannigan concedes that probable cause is required to cite a motorcyclist for violating the helmet law, he argues that an officer's knowledge regarding a motorcyclist's actual knowledge about his helmet's non-compliance is irrelevant, and that whether a motorcyclist's lack of knowledge constitutes a defense to a helmet law citation is a question for the factfinder at trial.
 
 
 49
 " 'Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.' " Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir.1996) (quoting United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988)). "Conclusive evidence of guilt is not necessary to establish probable cause. Mere suspicion, common rumor, or even strong reason to suspect are not enough, however." McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir.1984) (citing Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959)). " 'Courts look to the totality of the circumstances known to the officers' in determining whether there is probable cause for an arrest." United States v. Butler, 74 F.3d 916, 920 (9th Cir.1996). As with a determination of reasonable suspicion, courts can take into account "the experience and expertise of law enforcement agents who observed the defendant's activity." United States v. Valencia, 24 F.3d 1106, 1108 (9th Cir.1994).
 
 
 50
 We concluded above that an officer making an investigatory stop need not have reasonable suspicion that a motorcyclist has actual knowledge of a helmet's non-compliance if other factors, including the appearance of the helmet, are sufficient to establish reasonable suspicion that the helmet law is being violated. The question remains, however, whether an officer must have particularized probable cause to believe that an individual has actual knowledge of a helmet's non-conformity before citing a motorcyclist for violating the helmet law, or whether the officer need only have general probable cause to believe that the helmet law has been violated.
 
 
 51
 Generally, "an officer need not have probable cause for every element of the offense." Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995). "However, when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." Id.[7] Thus, if the requirement that a motorcyclist wearing a helmet that was certified at the time of purchase have actual knowledge of the helmet's non-conformity to violate the helmet law is a specific intent requirement, the CHP must have specific probable cause to believe that a motorcyclist has actual knowledge of a helmet's non-compliance to cite that motorcyclist for violating the helmet law.
 
 
 52
 In Gasho, the owners of an airplane, which had been seized by customs agents, removed the logbook from their airplane without objection from the agents. The agents later arrested the owners when they refused to return the logbook. The owners filed a Bivens action against the agents alleging that they did not have probable cause to arrest the owners of an airplane for either unlawfully "rescuing" property that had been seized by the customs agents or attempting to prevent a seizure of property, crimes that both have specific intent requirements. This court found that the customs agents could not have reasonably believed that the owners had the specific intent to frustrate or prevent a seizure because the owners did not have notice that the logbook had been seized or was about to be seized, due to the agents' original acquiescence to the owners' taking the logbook. Thus, the agents did not have probable cause to arrest the airplane owners. Id. at 1429-32. See also Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 706 (9th Cir.1989) (finding that police did not have probable cause to arrest Kennedy for grand theft after she took possession of her roommate's belongings as security on a debt where "there was no reasonable basis from which anyone could believe that Kennedy had the specific intent permanently to deprive [the roommate] of her property," as is required for a grand theft conviction).
 
 
 53
 The helmet law, as interpreted by the California courts and correctly articulated by the district court, requires specific intent as one of its elements. A motorcyclist who is wearing a helmet that was certified by the manufacturer at the time of sale must have actual knowledge of the helmet's non-conformity to be guilty of violating the helmet law. Thus, in addition to intending to wear the helmet in question, the motorcyclist must intend to wear a helmet that he knows does not comply with the helmet law.[8] Thus, because a violation of the helmet law requires specific intent on the part of a motorcyclist wearing a helmet that was certified at the time of purchase, the ticketing officer must have probable cause to believe that the specific intent, caused by the motorcyclist's actual knowledge of non-conformity, exists.
 
 
 54
 The district court properly found that the CHP policy and practice for enforcing the helmet law violate the Fourth Amendment rights of the named plaintiffs and others by citing them for violating the helmet law without any regard for whether the motorcyclists have actual knowledge that their helmets, which were apparently certified at the time of purchase, have been shown not to comply with DOT standards. The written CHP policy regarding helmet law enforcement, in effect since the implementation of the helmet law in 1992, does not require the citing officer to make any determination regarding a motorcyclist's knowledge of non-compliance, but rather states that "[o]fficers should use good judgment prior to citing a person(s) who is wearing a nonapproved helmet. The lack of helmet labeling is not a violation, but may be an indication that the helmet is not DOT approved." In a deposition taken in January 1994, after the Buhl opinion but before the Bianco opinion, Commissioner Hannigan indicated that under the policy, an officer has discretion to cite a motorcyclist without regard to that motorcyclist's actual knowledge of a helmet's non-compliance with Standard 218. Dep. of Hannigan, vol. I at 73-75, 90-91 (January 10, 1994).
 
 
 55
 Citation without regard to actual knowledge has continued even after Bianco indicated that such knowledge was required. Lieutenant Michael J. Nivens, the designated helmet law expert for the CHP in this case, stated in his deposition of September 19, 1994 that the CHP had not changed its written policy regarding enforcement of the helmet law since the law's implementation in January 1992. Dep. of Nivens, vol. IV at 615-616 (Sept. 19, 1994). A colloquy between Easyriders' attorney and Lieutenant Nivens demonstrates that CHP does not consider whether a motorcyclist has actual knowledge of a helmet's non-compliance with Standard 218:
 
 
 56
 BY MR. RARING: Q. So is it true that the CHP does not, as policy, does not consider whether or not the individual has actual knowledge of a determination of noncompliance before they would cite?
 
 
 57
 [BY LIEUTENANT NIVENS:] A. As policy, no.
 
 
 58
 Q. Is it true that, as policy, the CHP does not make a determination on whether the consumer has actual knowledge of any nonconformity with the helmet, whether it's a determination or any other criteria that would make the helmet not legal?
 
 
 59
 A. There's nothing in our policy that addresses that.
 
 
 60
 Q. So the officer can stop, detain and cite an individual who has no actual knowledge of a determination of noncompliance even though they're wearing a helmet with a manufacturer's certification; is that correct?
 
 
 61
 A. That's correct.
 
 
 62
 Id. at 619-20. Two of the plaintiffs claim that they were cited after the Bianco decision without regard to their knowledge of their helmet's non-compliance.[9] Because an officer is required to have probable cause to believe that a motorcyclist wearing a helmet that was certified by the manufacturer at the time of purchase has actual knowledge of the helmet's non-compliance with Standard 218, an officer who relies on CHP policy and his own discretion is not acting as a "prudent person" relying on "trustworthy information," Allen, 73 F.3d at 237, if he completely disregards the motorcyclist's knowledge or lack thereof. Thus, the CHP policy as it is carried out by CHP officers and other affiliated law enforcement agencies violates the Fourth Amendment.
 
 
 63
 The finding that there are ongoing violations of the Fourth Amendment, however, does not require that an injunction be issued to halt the conduct, absent a likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law. "[P]rinciples of equity, comity, and federalism ... should inform the judgment of federal courts when asked to oversee state law enforcement authorities." Lyons, 461 U.S. at 112, 103 S.Ct. at 1670; see also O'Shea, 414 U.S. at 499, 94 S.Ct. at 678. "[O]ur review of the injunction must be more rigorous when we review an injunction against a state as opposed to a federal agency, since the Supreme Court requires a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency." Thomas v. County of Los Angeles, 978 F.2d 504, 508 (9th Cir.1993) (citing Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976)). Such a pervasive pattern of misconduct can be demonstrated by showing "that the police misconduct flowed from a policy [or] plan" of the CHP. Thomas, 978 F.2d at 509; see also Lyons, 461 U.S. at 106, 103 S.Ct. at 1667 (holding that Lyons could have established a case-or-controversy for injunctive relief if he asserted "that the City ordered or authorized police officers" to impose chokeholds on suspects). "Specific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief." Thomas, 978 F.2d at 509.
 
 
 64
 While we are dealing with a relatively small number of citations of only fourteen individual plaintiffs in this case, the citations have been the result of a clear CHP citation policy in violation of the Fourth Amendment, which has continued despite the Bianco court's limiting interpretation of the helmet law. CHP argues that none of the motorcyclists is threatened with irreparable injury because the Fourth Amendment lack-of-probable-cause defense would be available at their trials on potential traffic citations. Because the Fourth Amendment establishes "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures," however, the wrong that the Fourth Amendment is designed to prevent is completed when a motorcyclist is cited without probable cause. See United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974) ("The purpose of the Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's person, house, papers, or effects. The wrong condemned is the unjustified governmental invasion of these areas of an individual's life. That wrong ... is fully accomplished by the original search without probable cause."); Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir.1992) (holding that "given the fundamental right involved, namely, the right to be free from unreasonable searches" the plaintiff had sufficiently shown likelihood of irreparable harm for preliminary injunction purposes); Cerro Metal Prods. v. Marshall, 620 F.2d 964, 974 (3d Cir.1980) (holding that "an [OSHA] inspection violating the Fourth Amendment would constitute irreparable injury for which injunctive relief would be appropriate").
 
 
 65
 Indeed, this circuit has upheld injunctions against pervasive violations of the Fourth Amendment. In Conner v. City of Santa Ana, 897 F.2d 1487 (9th Cir.), cert. denied, 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990), we affirmed the district court's grant of an injunction against the City of Santa Ana to prevent it from entering Conner's property without a warrant to remove old, inoperable automobiles, without questioning whether such a violation of the Conner's Fourth Amendment rights would result in irreparable harm. Id. at 1493-94. In International Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 551 (9th Cir.1986), we affirmed the district court's finding that absent an injunction, a labor union, five employers, and nine employees of Hispanic ancestry would suffer irreparable harm from INS searches and arrests at factories that violated the Fourth Amendment. See also Zepeda v. INS, 753 F.2d 719, 727 (9th Cir.1983) (American citizens of Mexican descent and Mexican citizens legally in the United States who were subjected to searches of their residences without consent, and detention without reasonable suspicion that they were illegal aliens, were entitled to a preliminary injunction against the INS where they had "demonstrated a possibility or irreparable injury by showing violations of their constitutional rights which, if proven at trial, could not be compensated adequately by money damages"); LaDuke, 762 F.2d at 1330 (enjoining INS searches of houses in violation of Fourth Amendment was appropriate where INS did not argue that legal relief would adequately compensate victims and there was a high likelihood of continued violations in the absence of an injunction). Likewise, in light of the CHP's clear policy for helmet law enforcement that violates the Fourth Amendment when used to cite motorcyclists without knowledge of their certified helmet's non-compliance with federal standards, an injunction is appropriate here.
 
 
 66
 The injunction's limitations on the CHP's actions against all motorcyclists, instead of an injunction that merely restricts the CHP's citation of the named plaintiffs, is appropriate in this case. While injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, see generally Zepeda, 753 F.2d at 727-28 & n. 1, "an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action-if such breadth is necessary to give prevailing parties the relief to which they are entitled." Bresgal v. Brock, 843 F.2d 1163, 1170-71 (9th Cir.1987) (emphasis in original). While there are only fourteen named plaintiffs in this case, spread among San Diego, Orange, Los Angeles, and Ventura counties, and an unknown number of members of Easyriders, an injunction against the CHP statewide is appropriate. Because the CHP policy regarding helmets is formulated on a statewide level, other law enforcement agencies follow the CHP's policy, and it is unlikely that law enforcement officials who were not restricted by an injunction governing their treatment of all motorcyclists would inquire before citation into whether a motorcyclist was among the named plaintiffs or a member of Easyriders, the plaintiffs would not receive the complete relief to which they are entitled without statewide application of the injunction.
 
 
 67
 Requiring CHP to have probable cause regarding a motorcyclist's actual knowledge of non-conformity does not prevent the CHP from enforcing the law. The CHP could increase its efforts to inform the public of what specific helmets do not comply with Standard 218. Because we vacate the first portion of the injunction, the CHP may stop motorcyclists based on the appearance of their helmets. If the officer discovers that a helmet has been determined not to comply with DOT standards but does not have probable cause to believe that the motorcyclist knows of the non-compliance, he could give a written warning to the motorcyclist that the helmet does not comply, and CHP could keep a record of such warnings. If the motorcyclist is stopped again, by the same or a different officer, this notice, or other information indicating that the individual motorcyclist knew about the helmet's non-compliance, could satisfy the probable cause of actual knowledge requirement.[10] Our articulation of these possible courses of action in no way implies that such efforts on the part of the CHP are necessary or would in all circumstances be sufficient to give motorcyclist's actual knowledge of a helmet's non-compliance with Standard 218, but rather to demonstrate that the second half of the injunction imposed by the district court is not so burdensome as Hannigan would suggest. Because the injunction will only remain in effect until the CHP makes appropriate amendments to its enforcement policy or the legislature or state courts modify the helmet law, see Easyriders, 887 F.Supp. at 246, the injunction will not involved extended, undue supervision of a state law enforcement agency by the district court.
 
 
 68
 Given CHP's clear policy of ticketing motorcyclists with non-complying helmets based on officers' discretion and without regard to the motorcyclists' knowledge of non-compliance, and given the irreparable harm from Fourth Amendment violations that cannot be adequately compensated at law, the second half of the district court's injunction, requiring the CHP to have probable cause to believe that the motorcyclists wearing helmets that were certified at the time of purchase have actual knowledge of the helmet's non-compliance with Standard 218, was appropriate in this case. Because the Fourth Amendment violations were a result of a CHP citation policy followed by other law enforcement entities in California, the scope of the injunction is necessary to afford the plaintiffs the relief to which they are entitled.
 
 CONCLUSION
 
 69
 We DISMISS Easyriders' appeal of the district court's holding that the helmet law, as interpreted by the California Courts, is not void for vagueness. We VACATE the portion of the district court's injunction that restricts the CHP's stopping of motorcyclists whom it suspects are violating the helmet law. We AFFIRM the portion of the district court's injunction that requires the CHP to have probable cause that the helmet law has been violated before citing motorcyclists for violating the law.
 
 
 
 [1]
 The helmets worn by plaintiffs were manufactured by Mohawk, E & R, Chico's, Florida's Choice, Frenchies, and an unknown manufacturer
 
 
 [2]
 SDSD and HBPD agreed to be bound by any injunction of the CHP issued in favor of the motorcyclists
 
 
 [3]
 A study by the Director of the Southern California Injury Prevention Research Center at UCLA's School of Public Health revealed that in 1992, the year after the helmet law was passed but before any interpretation of the statute by Bianco or Buhl, helmet use increased to about ninety-nine percent from the fifty percent usage prior to the law's implementation. Decl. of Dr. Jess F. Kraus at 2. A random sampling of 3,214 motorcyclists at twenty-nine locations throughout California revealed that only seven percent of riders appeared to wear non-standard helmets. Id. at 3. Thus over ninety percent of motorcyclists have been able to comply with the helmet law
 
 
 [4]
 "When interpreting state law, federal courts are bound by decisions of the state's highest court. 'In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.' " Arizona Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir.1995) (quoting In re Kirkland, 915 F.2d 1236, 1239 (9th Cir.1990)). In the absence of convincing evidence that the state supreme court would decide differently, "a federal court is obligated to follow the decisions of the state's intermediate courts." Kirkland, 915 F.2d at 1239. Thus, in the case at bar, we scrutinize the statute for vagueness as interpreted by California's intermediate Courts of Appeals
 
 
 [5]
 Many of the considerations involved in determining the propriety of issuing an injunction often overlap with the considerations used in determining whether there is an Article III case or controversy. Los Angeles v. Lyons, 461 U.S. 95, 103, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). Thus, for example, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974), and also does not provide sufficient grounds, absent a "great and immediate" threat of irreparable injury, for an injunction. Id. at 499, 94 S.Ct. at 678. Because we conclude below that Easyriders has made the greater showing necessary to sustain a portion of the injunction, we do not separately discuss the fact that Easyriders meets the Article III standing requirements
 
 
 [6]
 Indeed, of the five name-brand helmets that the named plaintiffs have been cited for wearing, four have at least had models recalled or investigated further by the DOT based on failure of tests. Thus, given that the helmets in question either did not comply with Standard 218 or bore striking similarities to stickers that did not comply, it can hardly be said that the officers were not at least "reasonable" in stopping them based on the appearance of their helmets. While the Fourth Amendment prohibits stops from being based on "broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped," Rodriguez-Sanchez, 23 F.3d at 1492, stops based on the appearance of a helmet do not involve such an impermissibly "broad profile" where there is a reasonable correlation between a helmet's appearance and its non-compliance with Standard 218
 
 
 [7]
 Black's Law Dictionary defines "specific intent" as "a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime." Black's Law Dictionary at 1399 (6th ed.1990)
 
 
 [8]
 This specific intent is not required, of course, where the helmet was not certified by the manufacturer at the time of sale
 
 
 [9]
 One of the plaintiffs was cited by the CHP, and the other was cited by the Laguna Beach Police Department, which relies on the CHP policy for helmet law enforcement
 
 
 [10]
 Probable cause may be based upon hearsay statements, and on information relayed to the arresting officer through official police channels. Butler, 74 F.3d at 920