**Eugene Wendell LONG, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 22384.**

United States Court of Appeals, Ninth Circuit.

Jan. 26, 1970.

Eugene W. Long, in pro. per.

Eric A. Nobles, Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Wm.

Matthew Byrne, U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, BROWNING and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant, a black man, appeals from convictions on a jury verdict in connection with an indictment charging him with violations, in two counts, of 21 U. S.C. § 174 and, in a one count violation, of 26 U.S.C. § 4705(a). After the convictions, the Government filed an information showing the appellant's prior narcotic conviction. Subsequently, appellant was sentenced to 10 years confinement on each of the three counts, the sentences to run concurrently. We affirm.

The events which led to the indictment of appellant, and others, commenced on the morning of April 4, 1967. On that morning, he received a telephone call from Lydia Russo, a co-defendant. He promised her to make the necessary arrangements to procure a quantity of narcotics. After several phone calls, he arranged to obtain for Russo a substantial quantity of heroin.

Meanwhile, an undercover agent of the Federal Bureau of Narcotics, Charles Underwood, met with other federal agents, at which time $225.00 in marked money was given to Underwood to pay for the narcotics. The other agents kept Underwood under observation. At approximately 2:00 P.M., appellant arrived at a point in the vicinity of an apartment house, then under observation. He was then a passenger in a 1953 Chevrolet. After a short conversation with the driver, appellant got out of the passenger side of the car and entered the front courtyard of the apartment complex. The apartment in question was located on the second floor and could be entered from both front and rear. Appellant used the rear entrance and once inside the apartment he spoke to Russo and Gary Moyer Scrivens, another co-defendant. At that time, neither Russo nor Scrivens, later Government witnesses, were working with the Government. Appellant spoke to both Scrivens and Russo in connection with supplying Russo with narcotics. Russo told appellant that the buyer had not yet arrived. Then, leaving the apartment, he walked to the driver's side of the automobile in which he arrived, spoke to the driver and returned to the apartment to await the arrival of Underwood, the purchaser. In the kitchen, he took a balloon containing heroin from his mouth and placed it on the table. In the meantime, Underwood arrived in the apartment area, parked his car and went to the apartment door. Russo answered the door and told him that her connection had arrived. Underwood displayed the money he brought with him, but refused to deliver the money until he had the heroin in his possession. Appellant remained in the kitchen and was told by Russo that the buyer had arrived. Appellant then split the balloon he had previously placed on the table. Part of the heroin was placed in another balloon and taken by Scrivens to the living room and there placed on a table. Underwood took the money from his shirt and handed it to Russo, who proceeded to count it. Underwood took the heroin, left the apartment and went to the car. He drove a short distance and handed the heroin to a Narcotics Agent. Russo gave appellant the money. He took it and left the apartment by the rear entrance. He entered the Chevrolet and within minutes was placed under arrest by the Narcotic Agents. They took from appellant's hands the marked money.

As a result of an earlier transaction between Underwood and Russo and Scrivens, the Government knew that their source was a male Negro. Prior to that transaction, the agents also knew that a 1953 Chevrolet or Plymouth with two male Negro occupants was observed arriving in front of the apartment complex where defendant Russo resided. One of these men was observed leaving the car and walking into the apartment. Some five to ten minutes later, after the

transaction had occurred, Scrivens and the male Negro were observed walking from the apartment to the sidewalk. The male Negro crossed the street and returned to the Chevrolet. Consequently, prior to the occurrence on April 4th, the Government agents had clear cut information that the source of narcotic supply of defendants Russo and Scrivens was a male negro. Likewise, the Government agents had observed a male Negro arrive and leave in the same type of automobile, at the time of the March 27th transaction. On April 4th, Russo told Underwood that her source would arrive between 1:00 and 2:00 P.M. Shortly after 2:00 P.M., the 1953 Chevrolet with the two male Negroes arrived. Underwood was outfitted by the Federal Agents with a transmitter. By use of the transmitter the Agents learned, through Underwood, that the source had arrived and that he was in the back room. After the events in the apartment, Underwood was observed leaving the apartment and entering his vehicle. At about the same time, appellant was observed leaving the apartment. Immediately thereafter, Underwood gave a prearranged signal that he had made the purchase of narcotics. This acknowledgement was radioed to Agent Walker who then ordered the arrest of appellant and his companion in the 1953 Chevrolet.

██ First, appellant contends that the officers had no probable cause for his arrest. We do not agree. Probable cause must be evaluated from the viewpoint of prudent and cautious police officers on the scene at the time of arrest. The issue is whether police officers, acting together, in particular circumstances, all conditioned by their observations and information and guided by their total police experience, reasonably could have believed that a crime had been committed by the person to be arrested. We have no doubt but that the police officers arresting the appellant, armed with their previous information and current observations, had probable cause to arrest the appellant. United

States v. Cleaver, 402 F.2d 148 (9th Cir. 1968); Reyes v. United States, 417 F.2d 916 (9th Cir., 1969); Davis v. United States, 409 F.2d 458 (D.C.Cir. 1969), cert. denied 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469; Johnson v. Middlebrooks, 383 F.2d 386 (5th Cir. 1967), and United States v. Rowlette, 397 F.2d 475 (7th Cir. 1968), are in complete support of a finding of probable cause for the arrest on the facts here presented.

We hold there was probable cause for the arrest, even though there was some conflict in the Government's testimony as to the nature of the prearranged signal.

██ Next, appellant urges that the Government knowingly used tainted and perjured testimony. This contention is wholly without foundation. He says that the testimony of Scrivens was induced by the promise of the United States Attorney to allow Scrivens to plead to an amended indictment and that the United States Attorney did not bring this alleged promise to the attention of the Court. Consequently, appellant says, Scrivens' credibility went unchallenged. Appellant relies entirely on the bald statements made in Scrivens' alleged appeal. There are no facts in this record which, in any way, support this charge. The same can be said of his claim of inconsistency in the testimony of Agent Walker as given on the motion to suppress and at the time of trial. Simply stated, there is no inconsistency in this witness' testimony. An outline of specific facts is necessary to support an allegation that the Government knowingly used perjured or tainted testimony. Robinson v. United States, 348 F.2d 992 (9th Cir. 1965); Marcella v. United States, 344 F.2d 876 (9th Cir. 1965), cert. denied 382 U.S. 1016, 86 S.Ct. 630, 15 L.Ed.2d 531; Black v. United States, 269 F.2d 38 (9th Cir. 1959), cert. denied 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357. The facts do not place appellant within the purview of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Appellant next contends that the grand jury which returned the indictment was empaneled in violation of his Constitutional rights, because of an alleged systematic exclusion of Negroes and Mexican-Americans from the panel. As previously stated, appellant is black. He argues that the Negro population in the county in which he was indicted is substantial, yet all white grand juries have been serving for as long as witnesses can remember. Appellant filed a supplemental motion to dismiss the indictment on the ground: "that Grand Jury which indicted defendant, Eugene Wendell Long, was unconstitutional because of the systematic, unlawful and unconstitutional exclusion of negroes and mexican americans from the panels." At the time of the hearing on the motion, the trial judge asked appellant if he had any evidence in support of the motion. Appellant's response rather clearly intimated that he had no evidence, but that the American Civil Liberties Union indicated a willingness to represent him on the subject.[1]

▇▇▇▇ Evidently, the appellant did not, at that time, care to pursue the subject. The issue is not again mentioned at the trial court level. The appellant went forward with the selection of a jury and did not again complain until the case was on appeal. The statements of the trial judge at this hearing, which occurred on May 26, 1967, clearly indicated that he would have granted an evidentiary hearing on the subject if appellant had insisted. The trial did not commence, nor did the selection of the trial jury commence, until August 15, 1967. Obviously, appellant had ample time in which to follow the Judge's suggestion and produce evidence of the alleged unfair exclusion of blacks and Mexicans from the Grand Jury. This, he failed to do. Keeping in mind that discrimination in jury selection must be proved by a defendant and is not presumed to exist, Rosenzweig v. United States, 412 F.2d 844 (9th Cir. 1969); Bloomer v. United States, 409 F.2d 869 (9th Cir. 1969); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), we hold that appellant did not meet this burden in the hearing afforded him by the Court. Moreover, he failed to follow through on the Court's suggestion that he might secure a supplemental hearing if he felt he could produce the evidence.

Other issues raised by appellant have received our consideration. We find them without substance.

Affirmed.

---

1. * * *

"THE COURT: * * * Is there any evidence you would want to put on in connection with this?

MR. LONG: Actually, I have contacted the American Civil Liberties Union with regard to this point, and they have indicated a willingness to represent this cause in amicus curiae. However, as of Friday, I didn't get a chance to get any confirmation, and I was going to motion the court for a continuance on this matter until I can get a disposition from them as to their intent.

THE COURT: Well, if they want to initiate something at a later time, they can, I think; or take any appropriate steps. But I don't see any point at the present time in deferring this.

MR. LONG: The only factual information that I can advance at this time is the statement adduced from newspaper reporting that there definitely isn't a proportionate cross section to sufficiently justify compliance with the constitutional mandate.

THE COURT: Well, that may be an issue which you may wish to urge, but it has been recently held that there is no requirement that jurors be chosen in proportion to population."