**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Mack THOMAS,
Defendant–Appellant**

**No. 86–1391.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1987.

Decided Dec. 30, 1987.

---

William A. Maddox, U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Lorraine J. Mansfield, Las Vegas, Nev., for defendant-appellant.

Before CHAMBERS, and CANBY, Circuit Judges, and KING,* District Judge.

CANBY, Circuit Judge:

Joseph Thomas appeals his conviction by a jury for transportation of securities taken by fraud in violation of 18 U.S.C. § 2314 and wire fraud in violation of 18 U.S.C. § 1343. We affirm.

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

## FACTS AND PROCEEDINGS BELOW

On May 6, 1986, appellant Thomas opened a checking account at Norstar Bank, Ridgelake branch in Rochester, New York, with a $100 deposit. Later that day, Thomas deposited a check for $87,300 in the same Norstar account. This check was drawn on Thomas' account at Goldome Savings, Rochester, New York, which account had been closed in September 1985. On May 9, 1986, Thomas withdrew $86,000 from his Norstar account in the form of a cashier's check payable to his codefendant Mark Ricci.

Ricci then appeared in Las Vegas, Nevada with the cashier's check. He attempted to use the check for a gambling stake or to cash the check at the Golden Nugget Hotel and at Caesar's Palace between May 9th and 12th. On May 12th, 1986, appellant Thomas and Ricci were arrested in Ricci's room at the Golden Nugget Hotel.

At trial, Thomas' principal defense was that he had no intent to defraud. In support of this argument, Thomas' father and brother testified that the family credit line was available to cover Thomas' bad checks. Thomas' father also testified that in the past he had always covered his son's bad checks. In rebuttal, the government presented the testimony of Thomas' probation officer, who had dealt with Thomas in connection with a prior New York conviction for a similar offense. The probation officer testified that Thomas and his father had told her that Thomas' parents stopped covering his bad checks as of April 1985.

On appeal, Thomas argues that as a matter of law, he cannot be guilty of transporting a security taken by fraud. He also contends that the trial court erred in certain evidentiary and procedural rulings.

## DISCUSSION

### Securities taken by fraud: 18 U.S.C. § 2314

■ Thomas first appears to argue that the cashier's check cannot be a stolen se-

curity because he owned it, having procured it from the bank in his own name. This contention misses the point, because the statute also applies to securities "taken by fraud,"[1] and that is the crucial allegation in Thomas' case.

■ Thomas then asserts that the cashier's check cannot have been taken by fraud, because at the time he procured the check, he believed that his family's line of credit, or his family's voluntary intercession, would make good the bad check he gave the bank. Although this point is presented as a legal argument, it depends upon a view of the disputed facts that apparently was not accepted by the jury. There was evidence that Thomas himself was not a signatory to the family's line of credit at the Norstar Bank, and that the credit accordingly could not be applied as a matter of course to his bad check. There was a conflict in testimony as to whether his father stood ready to make good his bad check.

Finally, the jury was clearly entitled, if not compelled, to find fraud on the undisputed evidence that Thomas wrote a check for $86,000 on an account that had been closed for six months, and obtained the cashier's check on the strength of that fraudulent deposit. The Norstar Bank was not told the $86,000 check was not valid, nor was it asked to issue the cashier's check on the strength of Thomas' family's credit. The fraud was fully accomplished when the cashier's check was taken, and the check was then transported, with Thomas' assistance, in interstate commerce. The crime was complete. It is not a defense to fraud that a parent of means stands ready to make restitution.

### Evidence of prior bad checks

Thomas next contends that the district court erred in admitting rebuttal testimony that Thomas wrote insufficient-fund checks in April and May 1985, resulting in a loss

---

1. 18 U.S.C. § 2314 provides, in relevant part: Whoever transports in interstate or foreign commerce any ... securities ... knowing the same to have been stolen, converted or taken by fraud ...

of $7,400 to First Federal Savings and Loan in Rochester, New York. The district court permitted the testimony as evidence of intent and opportunity, *see* Fed.R.Evid. 404(b), and as impeachment of Thomas' father's testimony that he had covered all of Joseph Thomas' prior bad checks.

"The determination of admissibility under Rule 404(b) rests in the discretion of the trial judge." *United States v. Hooton,* 662 F.2d 628, 634 (9th Cir.1981), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982). The district court's decision on balancing probative value against prejudicial harm under Fed.R.Evid. 403 is also reviewed for an abuse of discretion. *United States v. Feldman,* 788 F.2d 544, 557 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003. Evidence of prior acts "must be sufficiently related and proximate in time to be relevant under Rule 403." *United States v. Barry,* 814 F.2d 1400, 1404 (9th Cir.1987).

■ We conclude that there was no abuse of discretion here. The prior bad checks were written approximately one year before the transaction for which Thomas was on trial. Thomas' intent in depositing the bad check was very much in issue. The prior acts were closely related in circumstance to the transaction in issue, and were relevant and probative of intent. Thomas' case is therefore distinguishable from *United States v. Manafzadeh,* 592 F.2d 81 (2d Cir.1979), on which he relies. In *Manafzadeh,* it was error to admit evidence of similar crimes in a prosecution under 18 U.S.C. §§ 2314 and 2 because the defense was that defendant had nothing to do with creation of the fraudulent checks. Intent underlying the transaction was simply not in issue. It was the prime question here.

*Probable cause to arrest*

Thomas next contends that there was no probable cause to arrest him because the FBI agents had insufficient information to conclude that he was associated with Ricci. He argues that statements he made after the arrest accordingly should have been suppressed. Although the government contends that the arrest argument is raised for the first time on appeal, it was raised in defendant's pretrial Motion to Suppress.

This court reviews the district court's ultimate conclusion of the presence or absence of probable cause *de novo. United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir.) *cert. denied,* 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986).

The test for probable cause is whether "facts and circumstances within the officers' knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Id.* (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979).

■ FBI agent Smith testified he knew the following facts before he arrested Thomas: Joseph Thomas had purchased an $86,000 cashier's check made out to Mark Ricci in Rochester, New York on May 9. The cashier's check was purchased with a check for $87,300 issued on Thomas' closed account. Over the weekend of May 10, Mark Ricci had attempted to cash the check at Caesar's Palace and the Golden Nugget Hotel. Agent Smith knew there was a Mark Ricci registered in room 1425 at the Golden Nugget Hotel. As Agent Smith approached room 1425, two men exited the room and identified themselves as Mark Ricci and Joseph Sebastian. Smith had received a physical description of Thomas, and "Sebastian" fit that description. Smith identified himself as an FBI agent and questioned Ricci in the hotel room. Ricci acknowledged he had attempted to cash an $86,000 cashier's check which he had received from "an individual who owed him money whom he did not want to identify."

These facts and circumstances are sufficient to warrant Smith's belief that the man with Ricci was Joseph Thomas, and that there was probable cause to believe that Thomas had committed a felony.

*Presence of case agent witness during trial*

■ Thomas next contends that the district court erred by permitting the govern-

ment's investigating officer, FBI Agent Smith, who testified as a witness, to sit at counsel table throughout the trial. This argument is meritless.

This court reviews the district court's decision not to exclude a witness for an abuse of discretion. *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir.1986). Fed.R.Evid. 615 provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.... This rule does not authorize exclusion of ... an officer of a party which is not a natural person designated as its representative by its attorney.

Under the law of this circuit, Agent Smith was properly excluded from this rule as an officer for the government. *See, e.g., United States v. Meyer,* 403 F.2d 52 (9th Cir.1968) (per curiam) (not error to permit one FBI agent to sit at the government table during the trial although he was a witness); *United States v. Little,* 753 F.2d 1420, 1441 (9th Cir.1984) (IRS agent allowed to remain at prosecutor's table throughout trial despite assertion agent abused position by relaying information and coaching prospective government witnesses). We find no abuse of discretion.

*Admission of statements made to probation officer*

■ In July 1986, Thomas told his probation officer that as of April, 1985, his parents would no longer cover his bad checks. The probation officer so testified. Thomas contends that this testimony was received in evidence in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thomas' *Miranda* objection to the testimony was made in the form of a motion to suppress a day after the testimony. Because this was not a timely objection, we will only review for plain error. *United States v. Houser,* 804 F.2d 565, 570 (9th Cir.1986). Thomas has made no showing that the circumstances of his discussion with his probation officer called for *Miranda* warnings. Nor has he shown how the admission of his statement to the probation officer affected the outcome of the case and his right to a fair

trial. *See id.,* 804 F.2d at 570 (plain error appears if the evidence is inadmissible and its admission affects the outcome and his right to a fair trial). Here, as elsewhere, we find no reversible error.

AFFIRMED.