**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RODEL E. RODIS,
                *Plaintiff-Appellee,*

v.

CITY AND COUNTY OF SAN
FRANCISCO, a municipality;
LIDDICOET, Officer, San Francisco
Police Officer; BARRY, Sergeant,
San Francisco Police Sergeant;
ALEX FAGAN, San Francisco Police
Chief,
                *Defendants-Appellants,*

and

SAN FRANCISCO POLICE
DEPARTMENT,
                *Defendant.*

No. 05-15522

D.C. No.
CV-04-00314-MMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted
April 20, 2007—San Francisco, California

Filed August 28, 2007

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Cormac J. Carney,* District Judge.

*The Honorable Cormac J. Carney, United States District Judge for the
Central District of California, sitting by designation.

10669

Opinion by Judge D.W. Nelson;
Dissent by Judge Callahan

**COUNSEL**

Scott D. Wiener of San Francisco, California, briefed and argued for the defendants-appellants.

Lawrence W. Fasano, Jr. of San Francisco, California, briefed and argued for the plaintiff-appellee.

**OPINION**

D.W. NELSON, Circuit Judge:

Rodel E. Rodis brought suit against the City and County of San Francisco, the San Francisco Police Department, the police chief, and two police officers under 42 U.S.C. § 1983 alleging a violation of his Fourth Amendment rights during a February 17, 2003 arrest. The district court dismissed the suit against the City and the police chief, but it rejected an assertion of qualified immunity by two of the officers ("Defendants"). Defendants brought an interlocutory appeal,

and we affirm, finding the Defendants not entitled to qualified immunity.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Rodis is an attorney and an elected public official who sits on the Community College Board of the San Francisco City College. On February 17, 2003, Rodis entered a drugstore near his office to purchase a few items. He tendered to the cashier a $100 bill, and she examined it for authenticity. Because it was an old bill (a 1985 series), and because it appeared to have a texture different than bills with which the cashier was familiar, she asked the store manager for assistance. The manager came to the counter and examined the bill. Suspecting that it might be counterfeit, the manager took the bill to an office in the back of the store to compare it to other $100 bills from the store's safe.

While the manager was examining the bill, Rodis pulled another $100 bill from his wallet and paid the cashier. After determining that the second bill was authentic, the cashier gave Rodis his change, receipt, and items. Rodis then waited for the manager to return with his bill. After comparing Rodis's bill with similar bills, the manager returned to the front of the store and tested the bill with a counterfeit detector pen, which indicated it was authentic. Nevertheless, the manager remained suspicious because of the bill's appearance and texture. The manager told Rodis he thought the bill might be fake and he was going to call the police so that they could settle the issue. Rodis was frustrated with the delay but remained in the store willingly until the officers arrived.

Sergeant Jeff Barry and officer Barbara Dullea arrived first on the scene. Officers Michelle Liddicoet and James Nguyen arrived soon thereafter. The drugstore's employees conveyed to the officers their suspicions regarding the bill. The manager told Nguyen he had compared the bill to another and was uncertain about the bill's authenticity. The officers also exam-

ined the bill themselves. They concluded it was probably counterfeit, but because they were not certain, the officers decided it would be necessary to call the United States Secret Service to get an expert opinion. *Before doing so*, however, they arrested Rodis for violating 18 U.S.C. § 472,[1] which criminalizes the possession and/or use of counterfeit currency, because the officers believed it would be easiest to continue the investigation from the police station. Notably, no effort was made to investigate whether Rodis intended to use an ersatz bill or whether he believed the bill to be counterfeit. Furthermore, the officers never asked to see the other $100 bill Rodis had used to complete the purchase, nor did they ask to see the bills the manager stated he had compared with the bill in question.

Liddicoet and Nguyen handcuffed and transported Rodis in the back of a squad car to the police station. Once they arrived, the officers restrained Rodis in a holding area while Nguyen called the Secret Service. Unable to speak with an agent right away, Nguyen left a message requesting assistance, and after twenty to thirty minutes, a Secret Service agent returned the call. Nguyen and the agent discussed the details of the bill in question for five to ten minutes, during which the agent confirmed that the bill was in fact *genuine*. The officers released Rodis from custody, and Nguyen drove him back to the drugstore.

On October 1, 2003, Rodis filed suit against the City and County of San Francisco, then Chief of Police Alex Fagan,

---

[1]Section 472 states:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 472.

Sergeant Barry, and Officer Liddicoet. The complaint alleged false arrest and excessive force in violation of Rodis's Fourth Amendment rights, conspiracy to violate Rodis's rights, injunctive relief, and several state law claims, including false arrest and intentional and negligent infliction of emotional distress.

On February 11, 2005, the defendants moved for summary judgment, and on March 22, 2005, the district court granted the motion as to Rodis's conspiracy, municipal liability, and injunctive relief claims. The district court denied the motion in all other respects, holding that because the officers lacked evidence regarding Rodis's intent to defraud, probable cause was lacking and the arrest was unlawful. The court also found Barry and Liddicoet not entitled to qualified immunity because the illegality of the arrest was clearly established at the time.

## II.   DISCUSSION

### A.   *Jurisdiction & Standard of Review*

Normally, a district court's interlocutory order denying a motion for summary judgment is not immediately appealable. *Morgan v. Morgensen*, 465 F.3d 1041, 1044 (9th Cir. 2006). There is an exception, however, when a defendant's motion for summary judgment on the basis of qualified immunity is denied. *Gausvik v. Perez*, 345 F.3d 813, 816 (9th Cir. 2003); *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985). Under this exception, we have jurisdiction pursuant to 28 U.S.C. § 1291, *Behrens v. Pelletier*, 516 U.S. 299, 301 (1996), and we review the qualified immunity determination de novo. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).

### B.   *Defendants are Not Entitled to Qualified Immunity*

Qualified immunity serves as a defense to § 1983 claims against government officers "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether qualified immunity applies, we engage in a two-part inquiry:

> [W]e first must ask whether a constitutional right would have been violated on the facts alleged. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. If a constitutional violation is established, we consider whether that right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective . . . .

*Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006) (internal citations and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Defendants argue they are entitled to qualified immunity because (1) they did not violate Rodis's constitutional rights, and (2) even if they did not have probable cause to arrest him, at the time of the arrest the law was not clearly established such that a reasonable officer should have known the arrest violated the Fourth Amendment. However, arresting Rodis without *any* evidence he intended to use the bill to defraud the store or that he knew (or believed) the bill was fake was a violation of his Fourth Amendment rights. Further, it was clearly established at the time of the arrest that Defendants' conduct was unlawful. Thus, both arguments Defendants put forth are without merit.

### 1. Defendants did *not* have probable cause to arrest Rodis.

**[1]** Defendants concede they arrested Rodis without evidence he used the bill with the intention to defraud or that he

believed the bill to be fake. They also concede the arrest required probable cause as it was more than merely an investigatory stop. To be entitled to qualified immunity, therefore, Defendants must show probable cause existed absent any evidence of Rodis's intent or knowledge. This they cannot do.

Defendants' argument can be summarized in the following manner. First, they cite our decision in *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983), for the premise that probable cause does not require specific evidence of every element of an offense. Second, they posit that only where "specific intent" is an element of the offense, is evidence of intent required for probable cause, citing our holding in *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996). Third, Defendants contend that 18 U.S.C. § 472 is not a specific intent crime, and, therefore, evidence regarding Rodis's intent or knowledge was not required to establish probable cause.

By focusing on the distinction between specific and general intent, Defendants lose sight of the principal inquiry: whether they had probable cause to effectuate an arrest. Probable cause cannot be determined by applying "precise definition[s]" or rigid classifications of conduct, as Defendants suggest, "because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Indeed, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Thus, the specific circumstances surrounding the arrest are an indispensable part of the analysis: "[W]e examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

**[2]** A review of the record reveals that the circumstances surrounding Rodis's arrest fell *far short* of creating a "fair probability" he had committed *any* crime, much less the crime in question. *See United States v. Rodriquez*, 464 F.3d 1072, 1078 (9th Cir. 2006) ("Probable cause exists when there is a fair probability or substantial chance of criminal activity."). Rodis was arrested on suspicion of violating 18 U.S.C. § 472. It was clear well before Rodis's arrest that "[t]o support a conviction for possession of counterfeit currency with intent to defraud under . . . § 472, the government must prove three elements: (1) possession of counterfeit money; (2) knowledge, at the time of possession, that the money is counterfeit; and (3) possession with intent to defraud." *United States v. Rodriguez*, 761 F.2d 1339, 1340 (9th Cir. 1985); *see also Albillo-Figueroa v. I.N.S.*, 221 F.3d 1070, 1073 (9th Cir. 2000) (reciting same three required elements); *United States v. McCall*, 592 F.2d 1066, 1068 (9th Cir. 1979) (per curiam) (same). Therefore, to violate § 472, the defendant must not only possess or pass counterfeit money, but he must know the money is counterfeit *and* he must intend to use the money to defraud another.

Notwithstanding the statute's three requirements, Defendants assert they had probable cause to arrest Rodis based solely on evidence suggesting the bill might have been fake. Specifically, they point to the manager's suspicion that the bill was counterfeit, the fact Rodis used the bill to pay for small items, and the officers' own "diligent" and "independent" examination of the bill. Although it is not clear whether this evidence was enough to create the fair probability the bill was fake, even if we assume it was,[2] this evidence speaks to

---

[2]Our dissenting colleague argues that probable cause existed because "officers are allowed to make reasonable mistakes" and the officers here made a mistake in assuming the bill was counterfeit. Dissent at 10686. Of course, this is irrelevant, for even if the bill was fake, at least *some* evidence of Rodis's alleged intent to defraud would have been required to establish probable cause.

only one of the three elements of the offense; indeed, these facts have no bearing on the crime's two mens rea components (i.e., knowledge and intent to defraud), which are indispensable in the probable cause calculus. *See Gasho*, 39 F.3d 1420, 1429 (9th Cir. 1994) (opining, in the context of a probable cause inquiry, "[i]t is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act"); *Morissette v. United States*, 342 U.S. 246, 251 (1952) (noting that a crime is the "concurrence of an evil-meaning mind with an evil-doing hand").

**[3]** Defendants are correct that not every element required for a conviction is necessarily required to establish probable cause. *See Thornton*, 710 F.2d at 515. However, this rule must be applied with an eye to the core probable cause requirement; namely, that "under the totality of the circumstances, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *Hart v. Parks*, 450 F.3d 1059, 1066-67 (9th Cir. 2006).[3] The record shows, and Defendants concede, they had no evidence whatsoever demonstrating that Rodis intended to use the bill to defraud the store, nor was there any reason to believe Rodis believed the bill was fake. Of course, the dearth of evidence regarding the mens rea elements is not surprising given that (1) the officers did not even attempt to investigate Rodis's state of mind before arresting him, and (2) the bill was in fact genuine.

**[4]** What is more, several facts known to the officers at the time of the arrest significantly *decreased* the probability that Rodis violated § 472. Viz., Rodis had other $100 bills in his

---

[3]The dissent protests our citation to legal authority identifying what is required for a conviction under § 472 in determining what is required to establish probable cause. Dissent at 10687-88. But surely, identifying the elements of a crime, and evaluating which, if any, are present in a given situation are necessary to determine whether there is a "fair probability" that the crime has been committed.

possession that were genuine, one of which he used to complete the transaction; the counterfeit detector pen indicated the bill was genuine; and the officers knew Rodis was both a San Francisco attorney and a locally-elected public official with strong ties to the community in which the store was located. Specifically, Barry had known Rodis for several years. He knew Rodis was a member of the Community College Board, and he had interacted with Rodis personally, encountering him at activities associated with the elementary school that both Barry's and Rodis's children attended. Also, Rodis informed Liddicoet prior to his arrest that he was a public figure, and that he lived and worked within two blocks of the store. Liddicoet told him she knew who he was and that he "should be ashamed" of himself.

**[5]** Thus, the officers' knowledge regarding Rodis's identity and background discounted any probability that Rodis might have intentionally passed a fake bill. Defendants argue that this information is irrelevant because police officers do not provide favored treatment based on a person's identity. Rodis was not entitled to special treatment, however, nor did he request it. Instead, Rodis's strong ties to the local community should have been incorporated into the probable cause determination because *all* the facts known to the officers were relevant. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (reiterating that probable cause requires analysis of "the totality of the circumstances").

**[6]** In any event, even without knowledge of Rodis's identity and local ties, based on the totality of the other relevant facts, no reasonable or prudent officer could have concluded that Rodis intentionally and knowingly used a counterfeit bill, especially when "[t]he key element of section 472 is its mens rea, the specific intent to defraud." *United States v. DeFilippis*, 637 F.2d 1370, 1373 (9th Cir. 1981). Without at least some evidence regarding the knowledge or intent elements of the crime, probable cause is necessarily lacking. To hold otherwise would render any individual vulnerable to arrest who

unknowingly, through the normal stream of commerce, comes to possess or use a counterfeit bill, even if other circumstances suggest that a crime has not been committed. This is not and cannot be the law. *See United States v. Lorenzo*, 570 F.2d 294, 299 (9th Cir. 1978) ("The mere passing of a counterfeit bill is not a criminal offense . . . .").[4]

---

[4]Defendants' reliance on *Easyriders* is also misplaced. In that case, we opined, "when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." 92 F.3d at 1499 (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)). Erroneously, Defendants cite *Easyriders* for the proposition that *only* where an offense is a specific intent crime is evidence of intent required to establish probable cause. Thus, Defendants blatantly misconstrue our holding by confusing a sufficient condition (i.e., *if the underlying offense is a specific intent crime*, evidence of intent must be present prior to an arrest) with a necessary one (i.e., if evidence of intent is required prior to an arrest, *the underlying offense must be a specific intent crime*). Furthermore, Defendants' interpretation runs contrary to the fact-specific nature of a probable cause inquiry. Probable cause does not always require a showing of every element of the crime because it "is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Consequently, it is patently unreasonable to say that evidence of a defendant's intent or knowledge is *never* required to establish probable cause for a general intent crime, as Defendants would have us hold.

In any event, Defendants are also incorrect that passing counterfeit currency is a general intent crime. Generally, "[t]o act with the 'intent to defraud' means to act willfully, and with the *specific intent* to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself." *United States v. Cloud*, 872 F.2d 846, 852 n.6 (9th Cir. 1989) (emphasis added). Section 472 expressly requires an "intent to defraud." 18 U.S.C. § 472. Thus, under *Easyriders*, proof of Rodis's specific intent to deceive or cheat was required to arrest him. *See also DeFilippis*, 637 F.2d at 1373 (stating that § 472 requires the specific intent to defraud).

## 2. At the time of Rodis's arrest, it was clearly established that evidence of intent was required to establish probable cause.

Defendants contend that, even if they did not have probable cause to arrest Rodis for the offense, the law was not clearly established at the time such that a reasonable officer would have known the arrest was unlawful. They are incorrect.

**[7]** Requiring the law to be clearly established "is not to say that an official action is protected by qualified immunity unless the *very action in question* has previously been held unlawful, but it is to say that in light of pre-existing law the July 5, 2007 unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted) (emphasis added). This means that the right may be clearly established even when "[t]he reasoning, though not the holding" of a prior court of appeals decision puts the officer on notice. *Hope v. Pelzer*, 536 U.S. 730, 743 (2002). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances" and the facts need not be "materially similar" to the plaintiff's situation. *Id.* at 741. If the law were otherwise, "officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001).

**[8]** As heretofore explained, it was well established at the time of Rodis's arrest that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Based on the totality of the circumstances, no prudent officer reasonably could have concluded there was a fair probability that Rodis violated § 472 or any other offense. "Mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause, *Easyriders*, 92 F.3d at 1498, and the

evidence in this case fell short of creating even a strong reason to suspect. Therefore, the officers were on notice that something more was required.

The only Ninth Circuit authority to which Defendants' point for support is *United States v. Bates*, 352 F.2d 399 (9th Cir. 1965) (per curiam), and *United States v. Ford*, 461 F.2d 534 (9th Cir. 1972) (per curiam).[5] These cases do not stand for the proposition Defendants claim—that probable cause to arrest for a violation of § 472 can exist with nothing more than a reason to believe the bill might be fake. In fact, the opinion in *Ford*, which consists of only two paragraphs, is so lacking in factual background, that what the panel deemed sufficient for probable cause is unknown. The opinion in *Bates* also fails to provide a factual context sufficient to give the decision meaning. The opinion acknowledges that a third party, a tow truck operator at the scene of the arrest, "filled in chinks of circumstances to give probable cause," and that "the circumstances pointing to Bates as a participant in counterfeit transactions . . . certainly pointed an accusing finger at him—enough for probable cause." 352 F.2d at 400. However, there is no explanation of what any of those circumstances were.

---

[5]Our dissenting colleague cites three out-of-circuit cases and *United States v. Blum*, 432 F.2d 250 (9th Cir. 1970), contending that evidence of intent is unnecessary to establish probable cause. Dissent at 10688-89. Her contention, however, lacks merit. First, the out-of-circuit cases, even if applicable to the circumstances in this case, are not binding on this panel. Second, *Blum* is easily distinguishable, in that numerous facts—such as the suspect fleeing the scene and the fact the suspect lived outside the state —could have been enough to create a "fair probability" he passed counterfeit bills. In any event, *Blum* is an old case, and since it was decided (nearly forty years ago), we have made clear that (1) "[t]he key element of section 472 is . . . the specific intent to defraud," *DeFilippis*, 637 F.2d at 1373, and (2) "when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Easyriders*, 92 F.3d at 1499.

Thus, in both *Ford* and *Bates* we are left to our own devices to determine what the relevant facts could have been in establishing probable cause. Consequently, neither case supports a finding of probable cause in the instant case.

## III.   CONCLUSION

**[9]** Probable cause requires "information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1996). Given all of the circumstances surrounding Rodis's arrest, no prudent person could have concluded reasonably that there was a fair probability Rodis had committed a crime. Consequently, Defendants are not entitled to qualified immunity.

**AFFIRMED.**

---

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent.

What happened to Mr. Rodis was unfortunate, and certainly could have been handled in a different manner. Arresting him due to a failure to recognize an older series 100 dollar bill, however, was not an intentional violation of Mr. Rodis's constitutional rights, nor was the law that probable cause for arresting someone on suspicion of violating 18 U.S.C. § 472 requires proof of the suspect's subjective intent clearly established. Therefore, the officers are entitled to qualified immunity. In fact, prior case law established that in order to have probable cause to arrest someone for a suspected violation of 18 U.S.C. § 472, an officer simply had to have evidence that 1) someone attempted to pass a false note, and 2) the identity of the person suspected of passing the note. *See United States*

*v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983) (collecting cases).

## I.  The officers did not violate Mr. Rodis's constitutional rights.

Our analysis should begin with the basic principles of qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell*, 472 U.S. 511, 526 (1985)). "The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Id*. at 200-01 (quoting *Mitchell v. Forsyth*, 472 U.S. at 526). "[I]t is fundamental that in a defense of qualified immunity in order to have the public official relieved from time-consuming pre-trial procedures and trial itself, it is important to resolve this issue at an early stage of the litigation." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 808 (9th Cir. 2003).

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. The reason for this initial inquiry is to state principles that "will become the basis for holding that a right is clearly established" to advance the interpretation of the law. *Id*. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[1] *Id*.

---

[1]The majority's opinion appears to begin its analysis by deciding that the right to avoid arrest if there is no evidence of specific intent is clearly established without first finding a constitutional violation. (Maj. Op. at 10678.) The Supreme Court specifically rejected this approach in *Saucier v. Katz*, 533 U.S. at 200.

A.    Officers are allowed to make reasonable mistakes of fact without violating constitutional rights.

Mr. Rodis contends that the officers violated his Fourth Amendment rights by arresting him without probable cause to believe that he possessed the intent to defraud, one of the elements of a violation of 18 U.S.C. § 472. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution." *Saucier*, 533 U.S. at 205. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

In this case, the officers made a simple mistake — they mistook a genuine 1985 series 100 dollar bill for a fake because the clerk who received the bill from Mr. Rodis, the manager who examined the bill, and the officers who responded to the scene had never seen a pre-1991 100 dollar bill before.[2] The bill Mr. Rodis presented lacked the security thread, watermarks, microprinting, and other anti-counterfeiting features of current 100 dollar bills.[3] The fact that there is another branch of government, the Department of the Treasury, that has agents specifically trained and tasked with detecting counterfeit bills shows that the average street-level officer is not held to have infallible counterfeit detection skills. The fact that a clerk, and the manager both continued to think that the bill was counterfeit indicates that the officers'

---

[2]The district court noted that Officer Liddicoet testified that the bill looked real to her. However, a review of the record shows that Liddicoet testified that the bill did not look real.

[3]The Treasury introduced security thread and microprinting in $50 and $100 bills in 1990 to deter counterfeiting. *See* Federal Reserve Bank of San Francisco, http://www.frbsf.org/federalreserve/money/funfacts.html (last accessed August 9, 2007). The Treasury also redesigned and added new security features to the $100 bill in 1996. *Id.*

mistake was objectively reasonable. That we have a different view of the evidence should not change our analysis. *See Hunter v. Bryant*, 502 U.S. 224, 226-27 (1991) (reversing the Ninth Circuit's refusal to grant qualified immunity because officials are entitled to an accommodation for reasonable error as a matter of law). Although qualified immunity does not protect "the plainly incompetent," in this case the failure of the officers to recognize an outdated bill lacking modern security features was not plainly incompetent, but rather an unfortunate mistake that any reasonable officer could have made. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

    B.   The majority improperly uses the standards for conviction in creating a new standard for probable cause to arrest under 18 U.S.C. § 472.

Assuming the mistake of fact does not completely dispose of Mr. Rodis's claim, the majority opinion improperly imposes the government's burden of proof at trial on the probable cause inquiry. "Probable cause must be evaluated from the viewpoint of prudent and cautious police officers on the scene at the time of arrest." *Long v. United States*, 422 F.2d 1024, 1026 (9th Cir. 1970). "The issue is whether police officers, acting together, in particular circumstances, all conditioned by their observations and information and guided by their total police experience, reasonably could have believed that a crime had been committed by the person to be arrested." *Id.* Our court has acknowledged time and time again that "[p]robable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Rodriquez*, 464 F.3d 1072, 1078 (9th Cir. 2006) (quoting *United States v. Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). The Supreme Court has long held that "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972); *see also Draper v. United States*, 358 U.S. 307, 311-12 (1959).

Yet the majority does precisely that by stating that "[i]t was clear well before Rodis's arrest that '[t]o support a *conviction* for possession of counterfeit currency with intent to defraud under . . . § 472, the government must prove three elements: (1) possession of counterfeit money; (2) knowledge, at the time of possession, that the money is counterfeit; and (3) possession with intent to defraud.' " (emphasis added) (Maj. Op. at 10678) (quoting *United States v. Rodriquez*, 761 F.2d 1339, 1340 (9th Cir. 1985)). The majority cites over and over cases concerning what must be proven at trial to sustain a conviction under 18 U.S.C. § 472, not cases specifically stating what is required for probable cause to believe that a person has attempted to pass a counterfeit note with intent to defraud. (Maj. Op. at 10678, 10679-80.) The government's burden at trial is not the same as the standard for probable cause. Conflating the two and imposing a new requirement that officers must have conclusive evidence of specific intent in order to have probable cause to arrest violates the basic principles of qualified immunity in arrest cases.

    C.    Under existing law, the officers had probable cause to arrest Mr. Rodis on suspicion that he violated 18 U.S.C. § 472; therefore they did not violate his constitutional rights.

So what was the proper inquiry for analyzing whether the officers had probable cause to arrest Mr. Rodis? In *Everett*, 719 F.2d at 1120, the Eleventh Circuit held that, "[t]he passing of a counterfeit note coupled with an identification of the person who passed the note furnishes probable cause to arrest the individual identified as passing the note." "Generally, probable cause to arrest for the offense of passing a counterfeit note is established by circumstances showing the passing of a counterfeit note coupled with an identification of the individual who passed the note." *United States v. Hernandez*, 825 F.2d 846, 849 (5th Cir. 1987). In *United States v. Blum*, 432 F.2d 250, 251-53 (9th Cir. 1970), we upheld a finding of probable cause based on a merchant's report that he received

bills he believed were counterfeit, and the officer's examination of the bills. The arrest in that case was based solely on the report of the service station owner, his description of the suspect and the suspect's car, and the officer's examination of the bill and determination that it was a counterfeit bill. *Id*. at 251-52. A bulletin was broadcast on the radio, and an officer arrested the defendant without a warrant a short time later. *Id*. at 252. After discussing the probable cause standard at length, this court affirmed the denial of a motion to suppress, stating "we conclude that on the basis of the facts and circumstances known to the police officers involved, or as to which they had reasonably trustworthy information, that probable cause existed for Blum's arrest." *Id*. at 253.

Nothing in our case law undermines the premise of *Blum*, or the Fifth and Eleventh Circuit's determination that probable cause that a person violated 18 U.S.C. § 472 is satisfied upon the attempted passing of an apparently counterfeit note and the identification of the person who tried to pass the note. *See also United States v. Allison*, 616 F.2d 779, 782 (5th Cir. 1980) (concluding that officer's lack of firsthand knowledge concerning defendant's intent to defraud does not eliminate probable cause created by reliable information that possessor attempted to pass bill as genuine); *United States v. McCoy*, 517 F.2d 41, 43 n.1 (7th Cir. 1975) ("[T]he record clearly shows that the arresting officer had knowledge of facts — namely, that McCoy had attempted to acquire merchandise in exchange for a counterfeit bill — which established probable cause to believe that appellant had violated § 943.38 of the Wisconsin Criminal Code (Forgery)."). Because "[i]ntent and knowledge may be inferred from [a suspect's] overall actions," the officers had probable cause to arrest him, and did not have to have probable cause of Mr. Rodis's specific intent to defraud. *United States v. Lorenzo*, 570 F.2d 294, 299 (9th Cir. 1978). An attempt to pass a counterfeit bill, even if the bill is recognized and rejected, is sufficient to sustain the intent element for the purposes of a conviction. *See id*. at 295-96, 299 (noting waitress rejected counterfeit bill, but sustain-

ing conviction); *see also United States v. McCall*, 592 F.2d 1066, 1068 (9th Cir. 1979) (affirming conviction where the defendant told inconsistent stories about the source of the counterfeit bills, even though the manager detected the counterfeit bill and called police immediately). Even the case cited by the majority, *United States v. DeFilippis*, 637 F.2d 1370, 1373 (9th Cir. 1981), declined to impose any additional elements, or to raise the burden of proof to sustain a conviction under 18 U.S.C. § 472. Based on well-established principles concerning probable cause, and case law specifically holding that officers have probable cause to arrest someone on suspicion of having violated 18 U.S.C. § 472 if there is evidence of the passing of an allegedly counterfeit note and the identification of a suspect, I would conclude that the officers did not violate Mr. Rodis's constitutional right to be free from arrest absent probable cause.

Applying the majority's newly announced standard will also result in absurd results. If a suspect simply says that he does not know if the bill is real or fake, or if he carries around a real bill and offers to substitute it for the counterfeit one, officers may not arrest him to investigate the probable unlawful conduct. In the case of a clever criminal who is skilled at lying, officers would be powerless to arrest the suspect even when he attempts to pass a clearly counterfeit bill, if the suspect verbally disavows knowledge or intent and pays with a legitimate bill. A criminal could test the counterfeit detection skills of clerks, bartenders, and other consumers at will without fear of arrest.

Imposing a requirement that asks officers to read criminals' minds to discern their subjective knowledge and intent is not practical or grounded in reality. Intent to defraud is often established through evidence concerning knowledge such as additional counterfeit bills, reproduction equipment, plates, ledgers, and other evidence that officers would no longer be able to gather incident to arrest or through a search warrant. For example, if the bill in this case happened to be counter-

feit, further investigation would have established that Mr. Rodis genuinely lacked the specific intent to defraud, making him a victim of counterfeiting. Detectives, or more likely Secret Service agents, would then investigate to determine the origin of the bill, and hopefully arrest the counterfeiters.

In this particular case, however, the officers made the reasonable mistake of failing to recognize a genuine pre-1991 100 dollar bill. The majority uses this mistake to impose a new, higher standard for probable cause based on the elements necessary to sustain a conviction, instead of concentrating on whether it is more probable than not that a crime occurred under these circumstances. (Maj. Op. at 10678, 10679-80.) I would follow our prior decision in *Blum*, as well as the rulings in other circuits establishing the standard for probable cause for violations of 18 U.S.C. § 472 and conclude that the officers did not violate Mr. Rodis's Fourth Amendment rights because they had sufficient probable cause for the arrest.

> D.   There is no constitutional requirement that an officer fully investigate a suspect's defenses, including his lack of the required mental state, before arrest.

As an additional justification for concluding that the officers did not have probable cause, the majority faults the officers' investigation under the circumstances, arguing that certain facts reduced the probability that Rodis had the specific intent necessary to secure a conviction. (Maj. Op. at 10679-80.) This argument concerning inadequate investigation of the intent element is foreclosed by *Baker v. McCollan*, where the Supreme Court granted qualified immunity after the arrest and detention of a suspect in a case involving mistaken identity. "[I]nnocence of the charge . . . is largely irrelevant to [a] claim of deprivation of liberty without due process of law." *Baker*, 443 U.S. at 145. "The Constitution does not guarantee that only the guilty will be arrested." *Id*. An arresting officer is not "required by the Constitution to investigate

independently every claim of innocence, whether the claim is based on mistaken identity *or a defense such as lack of requisite intent.*" (emphasis added) *Id.* at 145-46. "Nor is the official charged . . . to perform an error-free investigation of such a claim." *Id.* at 146. "The ultimate determination of such claims of innocence is placed in the hands of the judge and jury." *Id.*

Consistent with *Baker*, the officers were allowed to arrest Mr. Rodis because they had objective evidence that Mr. Rodis attempted to pass the note, and Mr. Rodis did not contest the clerk and the manager's statements that he attempted to pay for goods with the suspicious note even though the clerk, the manager, and the officers were mistaken and the note turned out to be genuine. After further investigation, the officers discovered their mistake and released Mr. Rodis. The officers were not constitutionally required to conduct an exhaustive investigation into Mr. Rodis's state of mind before making an arrest. *See id.* at 145-46; *see also Marks v. Carmody*, 234 F.3d 1006, 1009-10 (7th Cir. 2000) (concluding officers acted reasonably in arresting even though suspect presented evidence tending to show that he lacked the intent to defraud); *United States v. Bertram*, 719 F.2d 735, 737-38 (5th Cir. 1983) (rejecting defendant's argument that officers lacked probable cause to arrest because the counterfeit Krugerrands had the word "copy" on them, making it impossible for him to defraud anyone). Nor was the officers' mistake of fact a violation of Mr. Rodis's constitutional rights. Therefore, I would hold that the officers were entitled to qualified immunity because they did not violate Mr. Rodis's Fourth Amendment rights.

RODIS v. CITY AND COUNTY OF S.F.        10693

## II. The majority's opinion announces a new principle that officers must have specific evidence of intent to defraud in order to have probable cause to arrest; therefore, the law was not clearly established and the officers were entitled to qualified immunity.

This is precisely a case where "an official could not reasonably be expected to anticipate subsequent legal developments." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As noted above, the case law in this and other circuits, prior to today's holding, uniformly stated that the standard for probable cause to arrest on suspicion of violating 18 U.S.C. § 472 required only 1) an attempt to pass an allegedly counterfeit note, and 2) an identification of the person who attempted to pass the note. *See Blum*, 432 F.2d at 251-53; *Everett*, 719 F.2d at 1120; *United States v. Shepard*, 455 F.2d 1081, 1083 (10th Cir. 1972); *see also United States v. Ford*, 461 F.2d 534 (9th Cir. 1972) (per curiam) (noting attempt to pass counterfeit money, a description of the suspect by a storekeeper, and the key exhibit falling out of the suspect's pocket as supporting probable cause); *Bates v. United States*, 352 F.2d 399, 399-400 (9th Cir. 1965) (per curiam) (discussing identification of suspect). Our own cases involving other statutes that require intent to defraud do not require officers to accept a suspect's version of events or to determine whether he actually had that intent. *See United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005) (affirming a finding of probable cause to arrest for "placing a stolen registration sticker on a license plate, with intent to defraud" where there was "no dispute that Mayo admitted that he was driving the car that day, was in the process of buying it, and had been in possession of it for the last month"); *United States v. Thomas*, 835 F.2d 219, 222 (9th Cir. 1987) (discussing act and identity).[4] The Eleventh Circuit recently reiterated in a § 1983 false arrest case that "even for

---

[4]The majority cites two cases, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1499 (9th Cir. 1996) and *Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994) where the specific intent required was a form of specialized knowledge. For intent to defraud cases, the specific intent is usually inferred from the act itself.

a criminal statute that requires proof of an intent to defraud for a conviction, an arresting officer does not need evidence of the intent for probable cause to arrest to exist." *Jordan v. Mosley*, 487 F.3d 1350, 1356 (11th Cir. 2007).

In essence, the specific intent to defraud is inferred from the attempted passing of the bill. It is the rare case that a person intending to defraud will admit it. The case law discussed above concerning the lack of a duty to investigate a suspect's proffered defense of a lack of intent exists precisely because almost every suspect — innocent or not, will profess a lack of intent. The majority's additional requirement that the officer have some conclusive level of evidence of intent to defraud is inconsistent with these precedents.

The majority cites to no case specifically requiring that officers have explicit evidence of a suspect's subjective intent to defraud before they have probable cause to arrest on suspicion of violating 18 U.S.C. § 472. This lack of precedent to support the majority's approach is telling, and I cannot find that an officer must have conclusive evidence of intent to defraud before arresting a suspect was clearly established. In my view, the case law allowing officers to infer the intent to defraud from the attempted passing of the counterfeit note is sufficient to establish probable cause was the clearly established law prior to this decision. We cannot expect the officers to anticipate the majority's ruling that they should have had explicit and conclusive evidence of the suspect's subjective intent to defraud prior to arrest, because it is found nowhere else in any federal court's jurisprudence concerning probable cause to arrest under 18 U.S.C. § 472. Therefore, I cannot join in the majority's conclusion that such a requirement was clearly established prior to today, and I would grant the officers qualified immunity.

What happened to Mr. Rodis was an unfortunate mistake. We cannot allow bad facts to make bad law. Simple and reasonable mistakes of fact are not constitutional violations,

however, nor should a mistake subject the officers to a lawsuit under 42 U.S.C. § 1983. The case law simply does not support the majority's view that probable cause to arrest under 18 U.S.C. § 472 requires specific and conclusive evidence of a suspect's subjective intent to defraud. The majority's error is compounded by the fact that it fails to recognize that it is adding a wholly new requirement to the probable cause inquiry that has no support anywhere in federal statutory or case law, and therefore cannot be clearly established. I would vacate the district court's order and remand with instructions to grant the officers qualified immunity from suit and grant their motion for summary judgment.